Note.—See under (1) 37 Cyc. pp. 1081, 1110, 1185. (2) 37 Cyc. pp. 1080, 1177.

---

### DENVER PRODUCING & REF. CO. v. CAMPBELL et al.

No. 16671—Opinion Filed May 18, 1926.

Rehearing Denied June 22, 1926.

1. **Oil and Gas — Lease — Departmental Form—Terms and Conditions—Action to Cancel — Proper Payee After Death of Lessor.**

Under a departmental oil and gas mining lease where the lessee, after the death of the lessor, but before supervision is relinquished by the department, makes timely payment of the rentals and advance royalties according to the terms and conditions of the lease, a subsequent order of the department relinquishing supervision has no retroactive effect so as to render such lessee in default by reason of having made such payment to the department instead of to the grantees of the heirs of the original lessor.

2. **Same — Proper Deposit of Payments to Credit of Those Showing Title.**

In such case, where the grantees of the heirs, both before and after the order of relinquishment, agree to furnish lessee with abstract showing their title in order that lessee may be protected in making payment, but fail and refuse to do so after specific request, equity will not declare a default where the lessee deposits the money in the designated depository to the credit of the lease and payable to those showing title. For-

feitures cannot be sustained on the bad faith of those claiming their benefits.

### 3. Same—Notice of Default — Premature Action to Cancel Lease.

Where, by the terms and conditions of such a lease, 30 days' notice is required to be given by the lessor to the lessee of intention to cancel for nonpayment of rents and advance royalties, such notice is a prerequisite to the maintenance of the action for cancellation, and this requirement is not satisfied by a notice expressing a present and instant election to cancel and a demand for a release, such notice being given nine days after the earliest possible date on which default could be declared under the terms of the lease.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by J. D. Campbell and others against Denver Producing & Refining Company for cancellation of a departmental oil and gas lease. Judgment for plaintiffs, and defendant brings error. Judgment vacated, and cause remanded, with directions to the trial court to dismiss the action for want of equity.

This action was commenced August 2, 1924, by plaintiffs filing their petition in the district court of Seminole county against the defendant, wherein it was alleged in substance that plaintiffs were the owners in fee simple of certain real estate therein described, and are entitled to the exclusive and peaceable possession thereof; that defendant claims to be the owner and holder of a departmental oil and gas lease on the above-described lands executed during the lifetime of the allottee, but that whatever right or interest said defendant claims by reason of said lease is invalid, and said lease should be cancelled as a cloud upon the title of plaintiffs for the reason that said lease has been forfeited by reason of nonpayment of rentals due thereunder after due notice.

Defendant answered by general denial, and by affirmative allegation that said departmental oil and gas lease is now a valid and subsisting lease for the reason that defendant has carried out and performed all of the conditions contained in said lease.

The lease involved in this action was executed March 2, 1920, by one Lucy, a fullblood Seminole Indian, Roll No. 853, to H. L. Schuler, lessee. The lease was duly approved by the Secretary of the Interior, and thereafter passed by mesne assignments to defendant, Denver Producing & Refining Company, all of the assignments thereof being duly approved by the Secretary of the Interior. Lucy, the allottee, died during the early spring of 1924. Rentals and advance royalties were due April 10, 1924, in the sum of $210, and defendant paid the same to the Superintendent of the Five Civilized Tribes at Muskogee April 4th of that year.

March 11, 1925, the case was tried to the court without a jury, and at the conclusion of the evidence the court rendered judgment in favor of plaintiffs, canceling the lease for failure to comply with its terms, and after unsuccessful motion for new trial defendant has brought the case here by petition in error with case-made attached for review. Other facts necessary to be considered will be stated in the opinion.

M. A. Dennis, for plaintiff in error.

J. W. Willmott, R. J. Roberts, and Joseph C. Looney, for defendants in error.

Opinion by LOGSDON, C. There are seven assignments of error made for reversal of this case, but all are embraced under two propositions in the briefs. The first of these is:

"The trial court committed error in holding that plaintiff in error had failed to comply with the terms of the oil and gas mining lease involved in this action."

This being an equitable action, this court is authorized to consider and weigh the evidence, together with all inferences and conclusions to be reasonably drawn therefrom, and to affirm, reverse, or render, as equity and the rights of the parties, as disclosed by the entire record, may authorize. Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65; Marshall v. Grayson, 64 Okla. 45, 166 Pac. 86; Hart v. Frost, 73 Okla. 148, 175 Pac. 257; Lee v. Little, 81 Okla. 168, 197 Pac. 449.

No question arises as to the validity of the lease here involved up to the time of the death of Lucy, the original lessor. Her death date is not definitely fixed by the evidence, but was probably about February 12, 1924, the date named by the Superintendent at Muskogee when restrictions on her land ceased. (Act of May 27, 1908, sec. 9.) Neither does it appear from the evidence when plaintiffs procured their deeds from the heirs, or when such deeds were approved, if such be the facts.

A careful reading and consideration of the evidence preserved in this record, ren-

ders reasonable and logical the conclusion that plaintiffs studiously endeavored to bring about such a default in the payment of rentals and advance royalties as would authorize a cancellation of the lease. Facts from which this inference irresistibly arises are: On March 29, 1924, ten days before payment was due under the lease, plaintiffs wrote defendant that they had become fee owners of the land, and if defendant had not yet paid the rentals to the department, not to do so until plaintiffs had time to furnish abstract showing their right to such rentals. This was promised in about four days. It has not yet been furnished so far as this record discloses. Defendant waited the four days, and then paid the rentals to the Department on April, 4th. In the meantime plaintiffs were prosecuting their application for relinquishment of supervision by the Department, and on or about June 6th, such order was entered. On that date the Superintendent wrote defendant that supervision "is being relinquished," and returned to it the rentals paid on April 4th. On June 10th, defendant wrote plaintiffs, advising them of the notice from the Department, and requesting them to furnish proper evidence of title so that defendant's records could be corrected and payments be properly made. On June 12th, plaintiffs wrote defendant that Ed Warren, W. E. Grisso, and J. D. Campbell were owners of the land, but did not disclose the several interests. They requested defendant to send the rentals to the First State Bank of Seminole (First National Bank of Seminole is the bank named in the lease as depository), and again promised to send abstract. On June 19th, defendant wrote plaintiffs, calling attention to their promise and again requesting abstract. On July 1st, plaintiffs had their attorneys write defendant a letter, in which plaintiffs stated, "We hereby elect to declare the lease forfeited for failure to pay the rentals in accordance with the terms" of the lease. On July 3rd, defendant wrote plaintiffs that the rentals had that day been forwarded to First National Bank of Seminole to be deposited to the credit of the lease, and that upon being furnished proper evidence of plaintiffs' title, future payments would be made to their personal credit in the First State Bank of Seminole, as requested by plaintiffs in their letter of June 12th. One or more of the plaintiffs talked to officers of the depository bank after the funds were placed there concerning the deposit, and the president of the bank testified that the money would have been paid to plaintiffs upon evidence of title being shown. The general manager of defendant testified that the bank advised him that plaintiffs refused to accept the rentals so deposited. The president of the bank and two of the plaintiffs were witnesses on the trial, and the correctness of this statement by defendant's manager was not questioned.

Against the effect of the reasonable inferences arising from the facts above stated, it is contended by plaintiffs that it was the duty of defendant to search the records of Seminole county for evidence, which would make it safe for it to pay the rentals to plaintiffs in severalty. This was a dead claim, and the deed records alone of Seminole county would not have disclosed the validity of plaintiffs' title. But aside from this, defendant had the right to rely on the bona fide character of the promise of plaintiffs, twice expressed in letters, to furnish abstract showing title. That this promise proved a frail reed, designed and used merely for the purpose of inducing delay in making payment until a forfeiture was thought to have been incurred, is evident from the facts in evidence. But this frail reed, now broken, must remain a frail reed. It cannot now be used as a bludgeon for the purpose of beating down and destroying the equitable rights of defendant.

Very apropos of the situation here presented is the following language from Danciger v. Stone, 187 Fed. 853:

"The maxim that 'he who comes into equity must come with clean hands,' means that equity refuses to lend its aid in any manner to one seeking its active interposition who has been guilty of unlawful or inequitable conduct relating to the matter from which he seeks relief."

Under the first proposition presented it is concluded that the finding of the trial court that defendant failed to comply with the terms of the oil and gas mining lease, is not only unsupported by the evidence, but is clearly against the weight thereof.

Defendant's second proposition is that the trial court erred in holding that the letter of July 1, 1924, from plaintiffs' attorneys to defendant was a compliance with the 30 days' notice requirement contained in the lease. This provision as to notice is contained in paragraph 9 of the lease, which reads:

"Upon the violation of any of the substantial terms and conditions of this lease the Secretary of the Interior (or lessor, in event restrictions are removed as provided in paragraph 12 hereof), shall have the right, at any time after 30 days' notice to

the lessee specifying the terms or conditions violated, to declare this lease null and void and the lessor shall then be entitled and authorized to take immediate possession of the land."

The "substantial terms and conditions" claimed to have been violated by the instant defendant are thus expressed in paragraph 4 of the lease:

"The failure of lessee to pay such rental before the expiration of 15 days after it becomes due at the end of any yearly period, during which a well has not been completed as provided herein, shall be a violation of one of the material and substantial terms and conditions of this lease, and be cause for cancellation of such lease under paragraph numbered 9 hereof."

In their letter to defendant of June 12, 1924, plaintiffs had stated:

"As yet we have not received the rental and royalty for this year. However, we take it for granted that you have already forwarded the same to the Department at Muskogee, Okla. If you wish further evidence that we are the owners, I will, if you wish it, send you our abstract covering the above described land."

Clearly there was no intimation or suggestion of default or forfeiture in this language, but on the contrary a clear implication that plaintiffs recognized the insufficiency of the evidence of their title previously furnished and their willingness to render defendant safe in making payment by furnishing abstract. On June 19th, defendant wrote plaintiffs:

"In line with your letter of June 12th, will you kindly send us your abstract for examination? This will enable us to change our records correctly and forward rental and royalty."

No answer was made to or any notice taken of this request so far as the record disclosed, but on July 1, 1924, the letter of plaintiffs' attorneys was written, which is relied on as the notice required by the terms of the lease. The material portion of this letter reads:

"On March 29, 1924, you were notified by letter in due course of business that such change of ownership had taken place and requesting delay in the payment of the rental under the oil and gas lease on said land until proof of ownership could be made. No acknowledgment of this notice was made to the owners. The Department of the Interior released supervision in the meantime and on June 10th you advised that you desired proofs of ownership to enable you to pay rental to the proper party. You were advised of the ownership on June 12, 1924, and no further

efforts have been made to deposit the rentals in accordance with the terms of the lease. As lessors of the said lease we hereby elect to declare the lease forfeited for failure to pay the rentals in accordance with the terms of the same after notice of surrender of departmental supervision. We therefore request you to forward to us a release of this lease, or we will make such demands as are necessary to protect our rights under the statutes of the state of Oklahoma."

There had been no default at the time defendant received notice from the Department dated June 6th, that "supervision is being relinquished." Under paragraph 4 of the lease defendant had 15 days' grace period after the rentals became due to plaintiffs, within which to make payment before default could be declared. On June 10th, defendant advised plaintiffs of the action of the Department, and requested evidence of ownership, so that payment could be properly made. On June 12th, plaintiffs furnished the names of the owners without stating their several interests, and promised to furnish abstract. On June 19th, defendant called plaintiffs' attention to this promise, and again requested abstract. All this was within 15 days after the departmental notice. It is clearly evident, therefore, that no default could have been charged to defendant prior to June 21st, which would be 15 days after the Department notified defendant of its relinquishment of supervision. Only nine days before this earliest possible date of default, plaintiffs agreed to furnish abstract, but did not. On July 1st, when plaintiffs' attorneys wrote the letter relied on as an effective notice of default and cancellation of the lease, defendant had been in default only nine days under any view of the record most favorable to plaintiffs. This letter did not purport to give defendant but 30 days' notice of plaintiffs' intention to "declare this lease null and void" for violation of "the substantial terms and conditions" specified in the notice, but expressly declared, "we hereby elect to declare the lease forfeited," and demanded the instant execution and delivery of a release. This court construed the identical provisions of paragraph 9, supra, in the case of Chapman v. Carlock et al., 104 Okla. 152, 230 Pac. 516, and reached a conclusion contrary to plaintiffs' contention. In the syllabus to that case this court said, after quoting paragraph 9:

"In order to comply with said provision of said lease it is necessary to notify the lessees of the terms of the lease that have been violated, and that if the same are not

complied with within 30 days, then the lease will be considered forfeited. Held, such notice is a fundamental prerequisite to a suit for the cancellation of such lease; and where no such notice as prescribed by the foregoing provision has been given, no cancellation can be had. Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731, and Guffey v. Smith, 59 L. Ed. (U. S.) 856, followed."

Defendant's contention that the letter of July 1, 1924, was not such notice as is contemplated and authorized by paragraph 9 of the lease must be sustained.

For the reasons herein stated, the decree of the trial court canceling defendant's lease is vacated and set aside, and this cause is remanded, with directions to the trial court to dismiss the action for want of equity at cost of plaintiffs.

By the Court: It is so ordered.

Note.—See under (1, 2) 40 C. J. p. 1105 § 733. (3) 40 C. J. p. 1082 § 703.