### SEALY et al. v. POUND.

No. 17271. Opinion Filed Nov. 23, 1926.

Rehearing Denied Nov. 22, 1927.

1. **Appeal and Error—Objections Below—Record—Refusal of Court to Make Findings and Conclusions of Law.**

Where a party assigns as error that the court refused to make findings of fact and conclusions of law, as requested, and the record fails to show any request for such findings and conclusions, the assignment will not be considered by this court

2. **Oil and Gas—Forfeiture of Lease for Delay in Paying Rentals—Sufficiency of Ten Days' Written Notice by Lessor.**

The provision for ten days' written notice of default in paying delay rentals in an oil and gas lease, as a prerequisite to the right of forfeiture, is substantially complied with where the notice is given by the attorneys of lessor in writing to the attorneys of lessee and attorneys of lessee notify him by letter, which is acknowledged by lessee by letter and communicated to the attorneys of the lessor, in which the lessee denied the default and after ten days acknowledged default by tendering payment.

3. **Guardian and Ward—Invalidity of Oil Lease Covering Separate Tracts of Three Minors.**

An oil and gas lease contract made by the guardian of three minors on their separate tracts of land, two of which belonged to two of the minors severally and a two-thirds interest in the third tract held in common by the three minors, for a term of ten years or as long as oil and gas are produced in paying quantities, with a provision to commence a well within twelve months from date or pay delay rentals quarterly thereafter until a well is commenced, and further providing that the commencement of a well shall stop delay rentals, and if the well is dry when completed, then another well to commence within six months or the delay rentals resumed, and if the well is a paying proposition, to satisfy the provision for exploration, without confining the said provision to each separate tract of land, is void for the lack of definite consideration and the county court is without authority to confirm the sale on such conditions and approve such lease.

(Syllabus by Threadgill, C.)

Commissioners' Opinion. Division No. 3.

Error from District Court, Grady County: Will Linn, Judge.

Action by Walker T. Pound against John Sealy, Magnolia Petroleum Company, and others to cancel oil and gas lease. Judgment for plaintiff, and defendants appeal. Affirmed.

W. H. Francis, B. B. Blakeney, Hubert Ambrister, and W. B. Wallace, for plaintiffs in error.

Melton & Melton, for defendant in error.

Opinion by THREADGILL, C. The question involved in this appeal is the validity of an oil and gas lease that includes the separate unrestricted allotted lands of two Chickasaw minors and the joint inherited lands of three unrestricted Chickasaw minors. The mother, Mattie Pound, was the guardian of her three minor children, Walker T., Willie V., and Carrie L. Pound. On March 27, 1922, said guardian made and executed an oil and gas lease, under the orders of the county court of Grady county, to the Magnolia Petroleum Association, a joint stock company of Galveston, Tex.. on the land of Walker T. Pound, consisting of 205 acres, Willie V. Pound, consisting of 205 acres, and 102.63 acres of the three minors, being land inherited from their father, deceased, and of which the three minors owned jointly and equally the two-thirds interest and the mother owned one-third interest. The court ordered the lease on said lands sold, at public sale, for a cash bonus of not less than $1 an acre, for one-eighth oil royalty and for a term of ten years. The 410 acres sold for $1 an acre and the two-thirds interest in the 102.63 acres sold for two-thirds of $1 an acre, which was in the rate of $1 an acre for the entire interest. The sale was made, the court approved it, and ordered the lease executed and delivered to the Magnolia Petroleum Association. The full consideration for the lease was the cash bonus of $478.65, one-eighth of the oil to be produced after deducting oil for light, heat, and operations on the premises, $250 per annum payable quarterly for any gas well from which gas should be produced and used off of the land or sold or used for the manufacture of gasoline, the grantor having the use of free gas for one dwelling house on the land. The term of the lease was fixed at ten years "and for such other and further period of time as any of such minerals are produced from said land." It was provided that if a well was commenced prior to the expiration of the ten years and the drilling was in progress on the date the term expired. the lessee should have reasonable time to finish the well, and even to drill others, although no oil or gas was found so long as there was no cessation of the work for more than 30 days. It was provided that the grantee would commence operations for drilling the first test well on said leased premises within 12 months from the date of the lease, and. failing in this, would pay a "rental" or extension payment to the lessor in the sum of $119.65 quarterly until the well should be commenced or until said ten-years' period expired. Any well drilled under this provision not productive to be good to extend the time of commencing another well for six months or payment of rentals was to be resumed; a producing well, in paying quantities, to extend the grant for the ten-years' period or so long thereafter as such production was in paying quantities.

One of the provisions of special importance, according to the contentions of the parties, is as follows:

"If Magnolia fails to pay the rentals when due and such default continues for ten (10) days after grantor gives written notice thereof addressed to Magnolia at Dallas, Tex., calling attention to such default. grantor shall have the right to forfeit this lease, but failure to pay such rentals when due shall not be grounds for forfeiture until grantor, after such default, gives such written notice and the default continues for ten (10) days after receipt of same."

Another provision of importance in the controversy is to the effect that the payments provided for should be made to the grantor in person or to his successors in title by check of grantee payable to Citizens National Bank for the credit of grantor, or such person as designated, mailed to said bank of Chickasha, Okla., or at the election of grantee by check payable to said bank for the credit of grantor and said bank to be the distributor of said payments. The said lease contract was to be subject to the declaration of trust of the trustees of said company of date April 24, 1911, recorded in book 120, page 347. Deed Records of Jefferson county, Tex. After the lease was executed and approved by the county court the lessee paid the bonus to the guardian, and thereafter paid the quarterly extension payments of $119.65 each, sending checks to the Citizens National Bank of Chickasha, the last payment, before this controversy arose, being March 27. 1924. There was no effort at development upon any of the lands. On January 10. 1924, Walker T. Pound, one of the minors in said oil and gas lease, became of age, and thereafter on February 11. 1924, the guardian settled her accounts with him and was discharged by order of the county court. On June 10, 1924, said

Walker T. Pound commenced this action to cancel said oil and gas lease as to his lands. He contended that the county court had no jurisdiction to sell the lease on his land at the same time and on the same conditions as on the lands of the other two minors, and the court was without jurisdiction to approve the lease, which was an "or" lease and which, in effect, provided that a producing well on the land of any one of the minors satisfied extension rentals and development on the lands of the other minors. He further contended that even if the lease was valid, he had the right to declare it forfeited as to his lands, because his part of the extension rental, due March 27, 1924, was not paid to him or to any one authorized to receive payment for him. The defendant contended that the said lease was authorized by law and valid upon the face of the record, and it denied that it had failed to pay the extension rental as alleged by plaintiff, and denied plaintiff's right to declare a forfeiture by default of payment. It contended that forfeiture on this ground was based on ten days' notice, which had not been given as provided by the contract.

The cause was tried to the court without a jury, and judgment rendered for plaintiff canceling the lease and restraining the company and its trustees from interfering with plaintiff's possession of his lands involved in said lease contract, and defendant has appealed alleging eight assignments of error and asking for a reversal.

1. Defendant discusses its assignments of error under three propositions, the first being "that the court refused to make findings of fact and conclusions of law as demanded by defendant."

The law provides for written findings of fact separate from the conclusions of law in a case tried to the court, without a jury, where timely request is made for same. See section 556, Compiled Statutes, 1921, and Smith v. Harrod, 29 Okla. 3, 115 Pac. 1015. But defendant fails to point out in the record at what time it requested findings of fact and conclusions of law. We have examined the entire record and we find no request anywhere in the record, nor do we find any reference to such request in the motion for a new trial, and the only mention of such request is in the court's order overruling the motion for a new trial. It is stated in this order that this was one of the grounds for a new trial, but the motion itself does not support this statement. The order further states, in substance, that since the court found against the plaintiff upon all grounds except upon the ground of nonpayment of rentals "and having found that his findings in the journal entry of judgment in that regard were sufficient, overruled any further demand for findings of fact or conclusions of law and that the said defendants are not prejudiced thereby." The language of the decree does not sustain this statement. The language of the decree is that the court "finds the issues of fact herein in favor of the plaintiff, Walker T. Pound, and against the defendants, and concludes that the plaintiff is entitled to a decree of cancellation as prayed for." The decree continues and makes a special finding to the effect that defendants did not pay or tender to the plaintiff, nor any one authorized to receive the same for him, the delay rentals provided for in the oil and gas lease due on the 27th day of March, 1924, and a further finding that plaintiff had not waived his right to assert a cancellation of said lease. There is no finding of fact in the decree against the plaintiff and we do not know of any rule of law or practice that permits the court to conclude or contradict the holding and language of the judgment by a contrary statement until the judgment is changed or corrected in manner and form provided for this purpose.

We must assume that the language of the judgment means what it says. It does not appear from the record that timely request was made for written findings of fact and conclusions of law and defendant's proposition on this point is without merit.

2. Defendant's second proposition is to the effect that the court committed error in canceling the lease for failure to pay the rentals as required by the contract. This proposition is based upon its contention that no notice of default was given as provided by the lease. Defendant relies upon two provisions for notice: The first is to the effect that it would make its rental payments either to the grantor in person or to the Citizens National Bank of Chickasha or to any person the grantor designated, and all payments made the grantor or to the said bank for the credit of grantor or such person as might be designated by grantor, before actual notice to grantee of a change, would be binding on grantor's successors in title. We cannot see how this provision in the lease can have any application to the facts of the case. The payment complained of, and which defendant says it paid, was one-third interest in a certain check for $119.65 made to the credit of Mattie Pound. guardian of Walker T. Pound, Willie V., and Carrie L. Pound,

minors, at the time said Walker T. Pound was of legal age and after said Mattie Pound, his guardian, was legally discharged, and so this payment was not made to him nor deposited in the bank to his credit nor to any one des-ignated by him to receive payment of the pro-ceeds of the said check either directly or in-directly. Mattie Pound, the guardian of the other two minors, received the whole $119.65 and used it without accounting to said Walk-er T. Pound for any of it. The second pro-vision relied upon is as follows:

"If Magnolia fails to pay the rentals when due and such default continues for ten days after grantor gives written notice there-of addressed to Magnolia at Dallas, Tex., calling attention to such default, grantor shall have the right to forfeit this lease, but failure to pay such rentals when due shall not be grounds for forfeiture until and un-less grantor, after such default, gives such written notice and the default continues for ten (10) days after receipt of same."

Defendant contends that no notice was given, under this provision, before it made a tender of payment to plaintiff, and he was therefore not entitled to forfeiture and the court should, not have given judgment for cancellation. The record discloses that on May 3, 1924, the attorney for plaintiff wrote the attorneys for defendant that the company had failed to pay the rental as required by the lease, and they answered saying that they were taking the matter up with the Dallas office and if they were giving notice of default they would take advantage of the ten-days provision in the contract. They seemed to understand this letter might be notice. On May 13, 1924, plaintiff's attorneys received a letter from defendant's attorneys stating in substance that they had communicated with the Dallas office and had received a photostatic copy of the rental check sent to Mattie Pound as guardian, the check being dated February 14, 1924. They said this check was deposited in the Citizens National Bank of Chickasha and was paid and the same extended the lease until June 27, 1924, and the company advised that it did not know, until they received the letter written by its said attorneys, that Walker T. Pound had reached his majority and they wanted to know "where he wanted his next rental deposited or whether he wanted the payments to continue to his mother as guardian." On May 21, 1924, plaintiff's attorneys answered this letter and advised defendant's attorneys that their client, Walker T. Pound, declined to accept rentals under the lease, from the company or from any other person for the reason that the lease was invalid. There-after, on June 14, 1924, defendant made a tender of payment for the quarter ending June 27, 1924, and which it had already contended that it had paid by the check sent to the bank to be deposited to the credit of the guardian, but plaintiff refused to ac-cept the payment tendered.

We think this correspondence serves every purpose of notice as provided in the con-tract. Plaintiff's attorneys notified defend-ant's attorneys of the default and they noti-fied the Dallas office and the Dallas office acknowledged receipt of the notice and ad-vised their attorneys that they were not in default, citing $119.65 check sent to the bank at Chickasha, and inquiring where and to whom they should make the next payment —all of which was communicated to the at-torneys of plaintiff—and about 24 days elapsed from the time plaintiff's attorney no-tified defendant's attorneys that their client considered the lease invalid before the com-pany made a tender of payment. Defend-ant cites Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731; Chapman v. Car-lock, 104 Okla. 152, 230 Pac. 516; Denver Producing & Refining Co. v. Campbell, 118 Okla. 152, 247 Pac. 862; and relies upon the holding in these cases as to notice to sup-port its contention that no proper notice of default was given. These cases involved departmental leases and the facts and equi-ties therein are so different from the facts and equities of the case at bar they cannot be applied. We think the facts support the findings of the court that defendant failed to pay or tender payment of the delay rent-als as provided in the contract, and that plaintiff did not waive his right to assert cancellation thereof.

3. However, we do not consider the ques-tion of notice the decisive question in the case, but rather whether or not this lease made and approved by the county court March 27, 1922, for a term of ten years, at the time plaintiff was a minor 19 years of age and in the manner and form disclosed by the record, is a valid lease. The minor reached his majority January 10, 1924. The principal consideration for the lease was de-velopment and royalties. Ten years were given to explore for oil and gas and other minerals, eight of which were to run after plaintiff's majority. The first well was to be commenced within 12 months from the date of the lease, or "failing to do so, a rental for extension of three months in the sum of $119.65" was to be paid, and this rental was to be paid within every three months thereafter until a well was com-menced. In form the lease was a joint contract

on the separate allotments of two of the minors and the undivided two-thirds interest in common of the three minors on the inherit( I land. Exploring on one tract would answer for exploration on the other two tracts and stop payment of rentals on all the lands. Is this a valid contract on its face, and did the county court have authority to approve it? Plaintiff contends that it was not and that the county court had no authority to approve it, and cites the case of Jackson v. Carroll, 86 Okla. 230, 207 Pac. 735, to support his contention. In that case the court held the guardianship deed void upon the face of the record because the separate lands of three minors were sold under one petition, one order of sale. one notice of return of sale, one consideration, one order of confirmation, and one deed, without describing the particular interest of each minor and offering and selling such minor's separate tract as a district sale for distinct consideration. The sales could be in one proceeding, but not hodge-podge as to description and consideration. We have compared the proceedings in that case with the sales proceedings in the instant case. There is some difference. While there was no distinguishing description in that case—it was all hodge-podge as the lands of the three minors—yet in this case the separate allotments of the two minors were described as such, and the interests of the three in the inherited land were so designated and the bonus consideration of not less than a dollar an acre for all the lands described may be said to be fair upon the record (since the minimum was paid), but the other part of the consideration, which must be the princ'pal part of the consideration, the exploration on one minor's land answering for exploration on the separate lands of the other minors, and the hodge-podge delay rentals, fall under the same procedure and condemnation of the same rule as in that case. The court said in the first paragraph of the syllabus:

"A joint guardian over three minors, each minor being a Chickasaw freedman and each owning an allotment, makes application to a county court for an order to sell the three allotments, and in said petition does not set out the tract of each particular ward, nor the lands of each, which it is asked for an order to sell, but lumps the three allotments together, and asks for an order to sell them as the lands of the three minors. The court makes an order directing the sale in the same manner, not designating the separate tracts of the minors, and the notice of sale does not advertise the lands separately as the lands of each ward; the return of sale shows that the lands were sold for a lump sum without designating the separate tracts of each minor and the amount each brought. In fact, they were not sold separately. The order confirming said sale upon said return confirmed said sale as one tract for a lump sum. and the deed by the guardian to the purchaser was made in the same manner. Held, that such proceeding is an adsolute nullity. and conveys no title of the wards in and to said lands."

We are, therefore, of the opinion, and so hold, that the lease in controversy was absolutely void for the reason the provision for royalty and development, being the principal consideration, or delay rentals in lieu thereof, includes the separate tracts of land belonging to two different minors with the tract he'd in common by the three minors, and development on any one of the tracts is made to answer for development on all of the tracts, and the delay rentals are made payable in common without designating the particular part each minor is entitled to, and the county court was without authority to approve a lease of this character.

There are other important questions raised by the parties in their b.iefs, but we do not deem it necessary to follow the discussion in this opinion.

The judgment of the trial court is hereby affirmed.

By the Court: It is so ordered.

BRANSON, C. J.. dissents.

Note.—See under (1) 3 C. J. p. 870, §766: 4 C. J. p. 79, §1672; 38 Cyc. p. 1962. (2) 40 C. J. p. 1083, §703. (3) 28 C. J. p. 1208, §362 (Anno).