**GENERAL CRUDE OIL CO. et al. v.
HARRIS et ux.**

No. 5007.

Court of Civil Appeals of Texas.   Texarkana.
Feb. 4, 1937.

Rehearing Denied Feb. 11, 1937.

Andrews, Kelley, Kurth & Campbell,
Palmer Bradley, and W. M. Streetman, all
of Houston, C. F. Richards, of Lockhart,
C. D. Cund, of Oklahoma City, Okl., and
James Young, of Henderson, for appellants.

King, Mahaffey, Wheeler & Bryson, of
Texarkana, Barret Gibson, of Marshall,
and J. W. Timmins, of Dallas, for appellees.

JOHNSON, Chief Justice.

John W. Harris and wife, plaintiffs in the trial court, owned a tract of land located in the extreme east edge of the East Texas oil field, in Rusk county. On November 20, 1929, they executed to V. C. Perryman an oil and gas lease covering the land. A part of the consideration was $1 per acre bonus. Mr. Harris thought the tract of land contained 372½ acres, and was paid $372.50 cash bonus. The lease described the tract of land by references to corners and lines of surrounding tracts of land, and recited that it contained 372½ acres, more or less. About October 17, 1930, Mr. Perryman surveyed the land and found that it contained 397.35 acres, being 24.85 acres more than Mr. Harris previously thought the tract contained. Upon being informed of the result of the survey, and in consideration of the payment by Mr. Perryman of $24.85 bonus and the annual rental of $1 per acre on the 397.35 acres, Mr. and Mrs. Harris executed an instrument ratifying and confirming the original lease. On April 9, 1932, Mr. Harris executed an affidavit stating that the lease was in full force and effect at that time. Subsequently the lease was assigned to Walter H. Gant, Knox L. Garvin and H. H. Wegener, who were partners doing business under the firm name of Gant, Garvin, and Wegener. On March 25, 1934, the lessees, Gant, Garvin, and Wegener, drilled a producing oil well on the lease. Lessees drilled no other well on the property. In June, 1934, Mr. Harris complained to lessees about not having further developed the property, and they promised him that if he would be patient they would in a very short time drill more wells on the land.

On December 5, 1934, lessees not having complied with their promises to drill more wells, and not having made any effort to further develop the property, John W. Harris and wife executed to their attorney a lease covering an undivided one-fourth interest in the seven-eighths leasehold, and on the same date filed this suit against lessees, Walter H. Gant, Knox L. Garvin, and H. H. Wegener, individually, and as partners doing business under the firm name of Gant, Garvin & Wegener; and against Fred J. Adams and George W. Lyles, individually, and as a partnership doing business under the firm name of Adams & Lyles, the Reliance Oil & Royalty Corporation, and the General Crude Oil Company, which defendants held an indebtedness of approximately one and a quarter million dollars, secured by and payable out of one-fourth of the seven-eighths leasehold production; and against the Sun Oil Company, the First National Bank in Dallas, and the First National Bank & Trust Company of Oklahoma City, Okl.—which defendants held liens against the seven-eighths leasehold securing obligations of the lessees. By their third amended original petition—on which, together with a supplemental petition and a trial amendment, the case was tried—plaintiffs sued in trespass to try title to recover the 397.35-acre tract of land. In the alternative, plaintiffs sought a cancellation of the lease; and further sought, in the alternative, in the event they were denied recovery of the entire tract or of cancellation of the lease, to recover 24.85 acres out of the tract. Plaintiffs further sought to recover damages on account of the failure of the lessees, Gant, Garvin & Wegener, to develop the property with reasonable diligence after oil was discovered thereon. Also plaintiffs in the alternative sought a decree of specific performance against Gant, Garvin & Wegener to require them to develop the property.

All the defendants answered. The First National Bank & Trust Company of Oklahoma City, and the partnership of Gant, Garvin & Wegener filed pleas in abatement prior to answering to the merits. The other defendants filed motions for leave to withdraw their answers to the merits and to file pleas in abatement. The motions and pleas were carried along with the case and overruled at the conclusion of the evidence. The pleas in abatement were based upon plaintiffs' failure to give the sixty days' written notice, provided in the lease, which reads: "In the event lessors consider that the lessee has not complied with all of its obligations hereunder, both express and implied, before production has been secured, or after production has been secured, lessor shall notify lessee in writing setting out specifically in what respect lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause and no such action shall be brought until the

lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any act by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that the lessee has failed to perform all of its obligations thereunder." The defendants also by way of defense pleaded that the suit was prematurely brought because of the failure of plaintiffs to give the sixty days notice in writing. Defendants interpose numerous other general and special exceptions, and answered to the merits by pleas of not guilty and general and special denials. The lessees specially denied that the lease had not been properly developed and denied liability for damages on that account. In answer to defendants' pleas of failure to give the sixty days notice, plaintiffs alleged that the lessees Gant, Garvin & Wegener, by their promises from time to time that if plaintiffs would be patient they would shortly develop the property had caused plaintiffs to refrain from taking further steps toward protecting their rights in accordance with the terms of the lease, and that lessees had waived the provisions of the lease as to notice and were estopped to now assert same.

The case was tried to the court without a jury, and on March 5, 1935, judgment was entered in which defendants' pleas in abatement, demurrers, and exceptions were overruled. Plaintiffs were denied recovery of the land or any part of it, or to cancel the lease. Title to the leasehold was divested out of plaintiffs and vested in lessees, Walter H. Gant, Knox L. Garvin, and H. H. Wegener, subject to the rights and liens of the other defendants. Plaintiffs were awarded damages in the sum of $4,250, sustained as the result of lessees' failure to properly develop the property subsequent to the bringing in of the well on March 5, 1934, and prior to the filing of this suit on December 5, 1934. The judgment further decrees specific performance of the obligation on the part of the lessees, Gant, Garvin & Wegener, to develop the property, by ordering them to commence drilling operations on the premises within fifteen days of the date of the decree or from the date of the execution and delivery to them of a cancellation and release of the lease executed on December 5, 1934, by plaintiffs to their attorney, and within thirty days from said date to complete a well, and should thereafter drill and complete a well each thirty days until the lease is properly developed, under penalty of forfeiture. The defendants Walter H. Gant, Knox L. Garvin, and H. H. Wegener, and the General Crude Oil Company, the Reliance Oil Corporation, and the partnership of Adams & Lyles, and Fred J. Adams and George W. Lyles, individually, have perfected their appeals.

At the request of appellants the trial court in due time prepared and filed his findings of fact and conclusions of law.

Since entry of the judgment in the trial court, appellees have caused to be executed a cancellation and release of the lease which appellees had on December 5, 1934, executed to their attorney, and lessees have accepted same and have begun performance of that part of the judgment requiring the drilling of more wells on the lease. Appellants make no complaint of that part of the judgment.

Appellants' contentions are to the effect: (1) That the trial court erred in overruling and not sustaining their pleas in abatement, and defensive pleas that the suit was prematurely filed, on the ground that appellees had failed to give them sixty days notice in writing; (2) because the judgment awarding such damages is without proper support in the pleadings or in the evidence. For the purpose of discussing appellants' contentions, appellees' petition may be regarded as declaring upon the following causes of action: (1) An action in trespass to try title, based upon the theory that the lease was void and of no effect because of a mutual mistake in its execution, as to the amount of acreage contained in the tract of land described in the lease; (2) to cancel the lease, based upon the ground that the lessees had failed to perform the implied covenant to reasonably develop the property after the discovery of oil thereon; (3) in the alternative for specific performance of the implied covenant to reasonably develop; (4) to recover damages sustained as the result of lessees' breach of the implied covenant to reasonably develop the lease after the discovery of oil thereon.

■ It is apparent that appellants' plea in abatement was not good as against appellees' action in trespass to try title. It was not based upon the lease, but upon the theory that the lease was void and had never been of any effect because of mutual mistake in its execution. The error, if

any, of the trial court in failing to sustain the plea in abatement as to the count in appellees' petition seeking cancellation of the lease was rendered harmless by rendition of judgment denying cancellation, and in divesting title out of appellees and into appellants of the leasehold. Nor would reversal of the judgment be authorized on the ground that the trial court erred in failing to sustain appellants' plea in abatement as directed to the count in appellees' petition seeking specific performance of the lessees' obligation to develop the property, because appellants have accepted that decree of the court and received benefits under it and are not now making any complaint of that part of the judgment. The issue is narrowed to that of whether or not the trial court erred in overruling appellants' plea in abatement as directed to the action of appellees in seeking to recover damages, accruing after oil was discovered on the property and prior to the filing of this suit, as the result of lessees' failure to reasonably develop the property. In support of their contention that the plea in abatement should have been sustained appellants cite the following authorities: Hanover Co. v. Hines (Tex.Civ.App.) 11 S.W.(2d) 621; Hines v. Hanover Co. (Tex.Com.App.) 23 S.W.(2d) 289; Stein v. Blackwell (Tex.Civ.App.) 47 S.W.(2d) 490; Gulf Production Co. v. Cruse (Tex. Com.App.) 271 S.W. 886; 31 Tex.Jur. 836, § 187; Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856; Chapman v. Carlock, 104 Okl. 152, 230 P. 516; Denver Producing & Ref. Co. v. Campbell, 118 Okl. 152, 247 P. 362; Wapa Oil & Development Co. v. McBride, 84 Okl. 184, 201 P. 984; Papoose Oil Co. v. Rainey, 89 Okl. 110, 213 P. 882; Utilities Production Corp. v. Riddle, 161 Okl. 99, 16 P. (2d) 1092; Gypsy Oil Co. v. Champlin, 163 Okl. 226, 22 P.(2d) 102. Reading of these authorities reveals that they relate to the duty of the lessor to give notice as a prerequisite to the right to declare forfeiture of the lease and as a condition precedent to the prosecution of a suit to cancel the lease on the grounds of forfeiture or abandonment. They do not decide the two particular points here presented of whether the giving of the written notice in the manner and for the time stated in the lease is (1) a prerequisite to the giving rise to the right of lessors to, or the liability of the lessees for, the damages sustained as the result of the failure of lessees to reasonably develop the property after the discovery of oil thereon, and (2) as a condition precedent to the filing and prosecution of the suit to recover such damages. In answer to the first point, we do not think the written notice was a necessary prerequisite to the right of the lessors to, or the liability of the lessees for, the damages so sustained; that is to say, that the notice is not thought to be an essential element of the cause of action—in other words, that the stipulation may not be construed as a waiver of all damages sustained prior to the giving of such notice. Regarding the second point that of requiring the service of written notice for sixty days as a condition precedent to the bringing of the suit to recover such damages, the stipulation in the lease reads: "The service of said notice shall be a precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee." The notice given by lessors in this case to lessees in their request for further development may be said to be a substantial compliance with the provisions in the lease for notice, except that it was not in writing. Among their contentions appellees say that the provisions in the lease as to notice is unreasonable and void. R.S. art. 5546, provides: "No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable." The question of the reasonableness of a stipulation requiring notice is usually one of fact. And in 10 T.J. 351, § 201, it is said: "The burden is on a defendant who relies on a provision for notice to show by proper pleading and proof that it is reasonable." Appellants did not allege or offer any evidence that the stipulation for notice in question was reasonable. However, it is not necessary for us to determine the question of the reasonableness of the stipulation in this case; for, should it be held as a matter of law that the stipulation in question as to notice was reasonable and applicable to appellees' action for damages, the action of the trial court in overruling the plea in abatement is amply sustained on the grounds of waiver and estoppel on the part of appellants. Lessees having accepted the verbal notice and promised to comply with it, we do not think that they can now, in the circumstances, be held to complain that it was not in writ-

ing. Gulf Coast & S. F. Ry. Co. v. Todd (Tex.App.) 19 S.W. 761. It will be further observed that appellants were not injured by overruling the plea in abatement; the result of an order sustaining the plea would have effected delay only; and the giving of written notice would have been a useless procedure, since appellants deny liability. Federal Surety Co. v. Smith (Tex.Com.App.) 41 S.W.(2d) 210.

It is contended by appellants that the only proper basis for recovery of damages for breach of the implied obligation on the part of the lessees to reasonably develop the property is drainage. In addition to drainage, the trial court allowed recovery of damages sustained, "for oil lost from recovery," as the result of lessees' failure to reasonably develop the property after the discovery of oil thereon and prior to the filing of this suit. That part of the judgment is based upon evidence showing that appellees' land is located in the extreme Eastern edge of the producing area of the East Texas oil field; that the pressure in this field is from the west toward the east, as a result of which the oil migrates from the west to the east, thus keeping the oil sands on the east side, from which oil is being produced, refilled with oil from the west, hence the wells on the East side will be the last in the field to become exhausted. Therefore, any delay in production means ultimate total loss of the amount of oil that would have been produced during the delay. It was further testified to as to the number of wells that in the exercise of reasonable diligence should have been drilled by lessors after discovery of oil on the property and prior to the filing of this suit; also the respective dates on which such wells would have been begun and completed, and the amount of allowable oil that they would reasonably be expected to produce during that time. In respect to appellees' pleadings in this particular the petition, among other things alleges: "That the failure of the defendants to drill a sufficient number of wells to produce the oil underlying the aforesaid land and their delay in producing such underlying oil from such land has greatly reduced the ability of such land to produce oil whereby the plaintiffs have lost the value of great quantities of oil which might have been produced from said land by the defendants but for their failure to adequately develop the same and operating other wells upon the same," etc.

We do not agree with appellants' contention that drainage is the only element of recoverable damages. The right or "law of capture" is recognized and sustained by our courts. In Brown v. Humble Oil & Ref. Co. (Tex.Sup.) 83 S.W.(2d) 935, 940, 99 A.L.R. 1107, it is held:

"Owing to the peculiar characteristics of oil and gas, the foregoing rule of ownership of oil and gas in place should be considered in connection with the law of capture. This rule gives the right to produce all of the oil and gas that will flow out of the well on one's land; and this is a property right. And it is limited only by the physical possibility of the adjoining landowner diminishing the oil and gas under one's land by the exercise of the same right of capture. The following decisions discuss the law of capture as applied in this state: Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Houston & T. C. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St.Rep. 620, 4 Ann.Cas. 827; Prairie Oil & Gas Co. v. State (Tex. Com.App.) 231 S.W. 1088, 1089. Both rules are subject to regulation under the police power of a state.

"It is impossible to measure the exact quantity of oil and gas beneath each tract of land. It is equally impossible to fix a standard which will give exact justice to all landowners. Some landowners wish to produce oil and gas to the limit, while others desire to keep their oil and gas in the ground and develop it in less quantities. Hence arises the conflict of interests. It is now, however, recognized that when an oil field has been fairly tested and developed, experts can determine approximately the amount of oil and gas in place in a common pool, and can also equitably determine the amount of oil and gas recoverable by the owner of each tract of land under certain operating conditions."

In W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 29, it is said:

"The usual remedy for breach of the lessee's implied covenant for reasonable development of oil and gas is an action for damages, though, under extraordinary circumstances—where there can be no other adequate relief—a court of equity will entertain an action to cancel the lease in whole or in part. Texas Pacific Coal & Oil Co. v. Barker [117 Tex. 418], 6 S.W..

(2d) [1031] 1035, [60 A.L.R. 936]; Freeport Sulphur Co. v. American Sulphur Royalty Co. [117 Tex. 439] 6 S.W.(2d) [1039] 1045 [60 A.L.R. 890]; Grubb v. McAfee, 109 Tex. [527] 534, 535, 212 S.W. 464.

"Analyzing and applying the principles underlying the foregoing propositions and decisions, we are satisfied that, notwithstanding the stipulation that each producing well brought in under the lease on the 85,000 acres should hold 2,000 acres in a square without payment of future rentals, still the Sigler Oil Company, as the assignee of the original lessee, was under an implied obligation, after the drilling of the two paying wells, to continue with reasonable diligence, during the five-year term as well as thereafter, the work of exploration for, and production of, the oil and gas in the 3,000 acres.

"Mr. Summers shows by authorities cited that the rule is almost universally accepted which he states as follows: 'In absence of express stipulation creating a duty to proceed with drilling after the discovery of oil and gas in paying quantities, the law, to accomplish the manifest intention of the parties, in leases where the principal consideration is royalties to be paid the lessee, implies a duty on the part of the lessee to reasonably develop the premises.' Summers, Oil and Gas, § 129, p. 414, and note 48.

"After the producing wells were brought in by the Sigler Oil Company, no revenue whatever was to be derived from the lease of the land thereby released from rentals save through royalties.

"Discussing the covenant for additional wells where the first well is a producer, Mr. Merrill says: 'It has been argued with vigor and ability that, after production is secured from the exploratory well, there should be no implied covenant for further development, other than that necessary for protection of the leased premises against drainage. The basis of this argument is that, the lessor receiving some income from the lease, the presupposition of development and payment of royalties is satisfied and further development should be left to the will of the lessee. It is submitted, with all due respect, that this is unsound. The presupposition is not satisfied by the payment of royalties from one small well if the land is clearly capable of further profitable development. The lessor assuming the presupposition for development, may justifiably claim to have his land fully developed and to realize all the royalties it is capable of producing, in the absence of an agreement to the contrary.' Merrill's Covenants Implied in Oil & Gas Leases, § 117, p. 279.

"Quite enough was said in the opinions in the cases of Grubb v. McAfee and Texas Co. v. Davis [113 Tex. 321, 254 S.W. 304, 255 S.W. 601], supra, to demonstrate that we would do violence to what all parties plainly intended should we interpret this lease in such manner as to absolve the lessee or his assigns from the duty of reasonable development after proving that the 3,000 acres contained oil in paying quantities. * * *

"Not only may the lessor recover minerals granted under the ordinary oil or gas lease, which remain unproduced, on cessation of mineral operations, or on the lessee's abandonment of his rights; but, where a solvent lessee is merely guilty of negligence, to the lessor's injury, in the conduct of the work of exploring, developing, producing, or marketing the minerals, the lessor may recover his damages."

■ It is made clear in the above opinion that for lessees' failure to exercise reasonable diligence to develop the property "the lessor may recover his damages." The language of the opinion does not indicate that the lessors are restricted in recovery to the damages sustained by drainage only. We think recovery is limited only to damages sustained as the direct and proximate result of the breach of the contract, as in other cases. We are also of the opinion that the evidence is sufficient to support the amount of damages allowed.

Appellants' assignments of error not discussed have been considered and are respectfully overruled.

■ Appellees have filed cross-assignments of error to the effect that the trial court erred in refusing to render judgment in their favor on their action for title and possession of the tract of land, on the theory that the lease was void, as distinguishable from voidable, because there was mutual mistake in its execution, as to the number of acres contained in the tract of land, in that it was thought to contain 372½ acres, whereas in fact it contained 397.35 acres. Though grounds for equitable relief in proper circumstances, such a

mistake will not, as a matter of law, render the conveyance void. The proper remedy and relief in such circumstances as here presented is stated in the leading case of O'Connell v. Duke, 29 Tex. 299, 94 Am. Dec. 282, and authorities following that case; 14 T.J. 866, § 94.

The judgment of the trial court will be affirmed.