FIRST STATE BANK OF BEDFORD,
Texas, Petitioner,

v.

Macile MILLER, Individually and as
Executrix, Respondent.

No. B–6863.

Supreme Court of Texas.

March 1, 1978.

Hooper, Kerry, Chappell & Broiles, R. David Broiles and Charles W. Combs, Fort Worth, for petitioner.

Staples & Foster, Ross T. Foster, Hurst, for respondent.

DANIEL, Justice.

This is a usury case in which a borrower sought statutory penalties and the lender counterclaimed for interest. A note for $70,000 payable in three years, with interest payable annually at ten percent per annum, was alleged to be usurious because the lender advanced only $56,000 on the loan. It held the remaining $14,000 in a non-interest bearing account to satisfy postdated checks for the first two years' interest. After a non-jury trial, judgment was rendered against the borrower and in favor of the lender. The Court of Civil Appeals reversed and rendered, holding the transaction to be usurious. 551 S.W.2d 89. We affirm the judgment of the Court of Civil Appeals with a modification hereinafter indicated.

The controlling facts are undisputed. In the latter part of 1971, O. W. Miller and wife, Macile, were selling a tract of land they owned in Tarrant County and purchasing a tract in Johnson County. The transactions, including financial arrangements, were being handled for them by Andy Winters, a broker and real estate agent. As partial consideration for the Tarrant County sale, Winters arranged for the Millers to receive a long-term vendor's lien note in the sum of $219,800. Simultaneously, in order to retire a debt on the Tarrant County property and to obtain funds for improve-

ments on the Johnson County land, Winters arranged for the Millers to borrow the $70,000 in question from the defendant, First State Bank, Bedford.[1] All negotiations for the loan were conducted by Winters with Blease Tibbets, President of the defendant bank. Tibbets had knowledge of the details of the proposed simultaneous land transactions in December of 1971. He was named as trustee in the deed of trust securing the Millers' $219,800 note on the Tarrant County land. Tibbets agreed with Winters to recommend to his bank the $70,000 loan to the Millers if they would (1) assign their $219,800 note to the bank as security, (2) obtain a satisfactory "take-out letter" whereby a responsible third party would advance money to pay the note if it was not paid at the end of three years, and (3) leave in the bank under "escrow" or "freeze" $14,000 for payment of the first two years' interest. The proposed loan was approved by the loan committee of the bank on January 6, 1972, with the above conditions noted on the Loan Work Sheet.[2]

The $70,000 was deposited to the joint checking account of O. W. Miller and Macile Miller on January 7, 1972, after Andy Winters had delivered to the bank the $70,000 note dated January 6, 1972, signed by the Millers; the assignment dated January 6, 1972, from the Millers to the bank covering their $219,800 vendor's lien note on the Tarrant County land; and the required "take-out" letter dated January 4, 1972.[3] Pursuant to the terms of the loan agreement, the Miller bank account was "frozen" on January 12, 1972, as to the $14,000, and on January 14, Mr. Miller came to the bank and signed the following letter prepared by Mr. Tibbets:

1. This is the present name of the bank. At the time of the transactions in question, it was known as the First State Bank of Euless.

2. The $14,000 to be retained was described on the January 6, 1972 Loan Work Sheet as "Escrow 14,000.00 1st year, 7,000.00 2nd year." Bank President Tibbets testified that this provision was subsequently reflected by the "freeze" placed on the account on January 12, 1972, and by Miller's letter of January 14 and his two postdated checks for $7,000 each.

3. This was a letter agreement from Ryan Mortgage Company to the Millers and the bank agreeing to take over the unpaid balance of the Miller's note to the bank on or after January 5, 1975. For this commitment the Millers paid Ryan Mortgage Company the sum of $2,100 by check dated January 7, 1972. None of this fee was collected by or paid to the bank.

"January 14, 1972

"First State Bank

P.O. Box 699

Euless, Texas

"Gentlemen:

"I hand you herewith two checks signed by me on my account # 160–202–8. Each check is in the amount of $7,000.00, one is dated January 4, 1973 and one January 4, 1974. These checks represent interest which will be due your bank on the above date on my note with your bank in the amount of $70,000.00 dated January 6, 1972.

"This will be your authority to hold amounts sufficient to cover these checks and put a freeze on my account # 160–202–8 to accomplish same.

"Sincerely,

"Otis W. Miller"

Mr. Tibbets conceded that the $14,000 remained in the non-interest bearing account of the Millers; that this sum was comingled with the bank's own funds and loaned to other customers; and that the Millers had no access to the $14,000 for any purpose other than satisfaction of the post-dated interest checks.

The first check for $7,000 dated January 4, 1973, was paid to the bank from this frozen account. On March 3, 1973, before the second check was payable, O. W. Miller died. That check has not been cashed. On March 27, 1973, Macile Miller qualified as independent executrix of her husband's estate. Thereafter, she filed this suit, individually and as independent executrix, against the bank for penalties under the usury statutes and other relief. On February 17, 1975, while this suit was pending, the Ryan Mortgage Company agreement was exercised. The Company loaned Mrs. Miller $70,000, with which she paid the bank note. Without prejudice, she also paid $7,000 into the registry of the court to cover any interest which may have been due for the third year of the loan. The $7,000 for interest on the second year of the note (covered by postdated check of January 4,

1974) remains frozen in Mrs. Miller's account in the defendant bank. The trial court, after holding the loan to be non-usurious, awarded these two $7,000 sums to the bank on its counterclaim for $14,000 in unpaid interest.

The Court of Civil Appeals held as a matter of law that $56,000 was the true amount of the principal advanced; that the $21,000 in interest contracted for and charged by the bank was usurious; that the bank was not entitled to any recovery on its counterclaim; that Mrs. Miller was entitled to a judgment for penalties in the sum of $42,000, recovery of the $7,000 on deposit with the court and the $7,000 frozen in her bank account, together with an additional $14,000 for interest theretofore paid to the bank. We agree with this judgment, except as to the latter $14,000.

*Applicable Statutes and Cases*

■ Article 16, Section 11 of the Texas Constitution, as Amended November 8, 1960, authorized the Legislature to "define interest and fix maximum rates of interest." Pursuant thereto, the Legislature defined interest as "the compensation allowed by law for the use or forbearance or detention of money . . . ,"[4] and enacted the following relevant statutes, effective on October 1, 1967:

"Article 5069–1.04. Limit on rate

The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle."

Article 5069–1.06 provides in pertinent part:

"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by

---

**4.** Article 5069–1.01(a). This and all other statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

The bank argues that the total interest provided for by the note ($21,000) should be spread over the entire three-year term under the rule of *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937), as recently applied by this Court in *Tanner Development Company v. Ferguson*, 561 S.W.2d 777 (Tex.1977).[5] We agree that the *Nevels* rule of "spreading" is applicable to this three-year note. If the true principal sum of the loan had been $70,000, the $21,000 interest charge would not have been usurious. However, there is another equally well established rule in *Nevels* that requires the test for usury to be applied to the net amount of money of which the borrower had use, detention or forbearance. In *Nevels*, the stated amount of the note was $6,400 payable in five years, but the lender withheld from the cash proceeds of the loan $320 as a fee for making the loan. This Court treated the actual principal of the loan as $6,080 in determining whether the interest charged was a sum greater than such principal debt would produce at 10% per annum during the time for which the borrower had use of the money. As to this rule we wrote on motion for rehearing in *Tanner, supra* :

". . . in cash loan transactions from which the lender deducts interest, fees, commissions or other front-end charges, the amount of dollars actually received or retained by the borrower is held to be the 'true' principal. In such cases the amount of the stated principal is reduced accordingly in testing for usury. . . ."

Since the Millers had use of only $56,000 of the stated loan, that amount should be considered as the "true" principal. The

maximum lawful yield on that amount at 10% per annum for three years would be $16,800. This is $4,200 less than the $21,000 contracted for and charged. Thus, the interest was usurious, and the Court of Civil Appeals properly held that Mrs. Miller was entitled to recover penalties in the sum of $42,000.

*The Bank's Arguments to the Contrary*

The bank challenges this result on the grounds that the Court of Civil Appeals erred in holding (1) that there was a $14,000 "freeze" agreement as a condition precedent to making the loan and (2) that the bank did in fact contract for, charge or receive interest in excess of the maximum lawful rate.

■ We have carefully considered the evidence most favorable to the judgment of the trial court for the bank and have failed to find any probative evidence on the controlling issues which would support its findings and judgment. There is evidence that the "freeze" was not fixed on the ledger sheets until January 12, 1972, from which the bank says it could be inferred that the freeze of the $14,000 was not agreed to at the inception of the loan on January 6, 1972. There is also evidence that the freeze was Mr. Miller's own idea, and that he entered the agreement of his own accord on January 14, 1972. However, it is undisputed that this "escrow" or "freeze" requirement was a condition made by the bank loan committee and noted on its Loan Work Sheet on January 6, 1972. In any event, the test for alleged usury is not concerned with which party might have originated the usurious provisions. *Tanner Development Company v. Ferguson, supra.*

All of the above evidence and all other material testimony in this case came from the bank president, Mr. Tibbets. Transposed to narrative form, his testimony included the following undisputed admissions:

The loan was for Mr. and Mrs. Miller and Mr. Winters was negotiating the terms of

it . . .. On January 6, I indicated the method of payment of the interest. I wrote on there [the Loan Work Sheet] that we were going to escrow $14,000. The purpose of that escrow was in order to pay, have the interest money available when the interest came due in January '73 and '74. The escrow payment that I had there is the one that's subsequently reflected in the letter executed by Mr. Miller on the 14th day of January, 1972 . . .. I would not have made the loan without that assurance, either this or some other . . .. No, I would not have made the loan without that letter and those two postdated checks freezing the $14,000 in the account . . .. I put the freeze on there on my own [before the letter of January 14] just because he had told me what he was going to do, sir, and we were trying to expedite the closing and we just went ahead and closed it prior to his completing what he had agreed to do . . . at all times after January 12th there was a freeze . . . at least $14,000.00 in that account was frozen . . .. That $14,000 was a part of the general deposits at the bank . . . it actually constituted lendable funds to other borrowers and was most probably loaned out to other borrowers during 1972 . . .. For those loans to other borrowers the bank certainly charged and collected interest . . .. Between January 12, 1972 and January 12th, 1973, the Millers had absolutely no access to that $14,000.

In view of this undisputed evidence, the trial court erred in not holding as a matter of law that the Millers had use of only $56,000 of the loan and that the bank's contract for and charge of $21,000 for three years' interest was in violation of Article 5069–1.06. We overrule the bank's contention that the Court of Civil Appeals erred in so holding and in reversing the trial court on these points.

*Recovery of Interest Payments*

■ By counterclaim, the bank sought to recover as interest the two $7,000 sums, one of which was deposited with the court and the other being deposited in Mrs. Miller's account at the bank. Mrs. Miller denied the claim, alleging that the interest was usurious and therefore not subject to recovery. Since the interest contracted for was usurious, the bank was not entitled to recover it. *Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918 (Tex.1976). In reversing the judgment of the trial court, the Court of Civil Appeals properly rendered the judgment which the court below should have rendered,[6] that the bank take nothing on its counterclaim and that the two $7,000 deposits be paid to Mrs. Miller. We overrule the bank's contention that the pleadings and appellate procedures were insufficient to support such action by the Court of Civil Appeals.

■ As heretofore indicated, we do not agree with that part of the judgment of the Court of Civil Appeals which awarded Mrs. Miller an additional $14,000 as a recovery of usurious interest paid. Mrs. Miller did not plead for recovery of any interest paid. Such a claim was not tried by consent nor was it presented by Mrs. Miller on appeal. The Court of Civil Appeals, on its own motion, added this award "to effectuate the intent of the usury statute." A party may not sustain a favorable judgment on an unpleaded cause of action which was not presented to the trial court or in the Court of Civil Appeals. *Oil Field Haulers Ass'n v. Railroad Commission*, 381 S.W.2d 183 (Tex. 1964); *State v. J. M. Huber Corporation*, 145 Tex. 517, 199 S.W.2d 501 (1947).

Neither do we agree that recovery of interest paid is authorized as an additional forfeiture penalty under Article 5069–1.-06(1), which provides that any person who "contracts for, charges or receives" usurious interest "shall forfeit to the obligor twice the amount of interest contracted for, charged or received . . .." Section (1) of Article 5069–1.06 does not so provide. Section (2) of the same Article, relating to any lender "who contracts for, charges or

6. See Rule 434, Texas Rules of Civil Procedure.

receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit *as an additional penalty, all principal as well as interest* and other charges . . . ." If the Legislature had intended the additional penalty of forfeiture of interest paid under Section (1), it would have been a simple matter to have so stated, as in Section (2). The changes made by the Legislature in the successor Articles 5069–1.04 and 5069–1.06 are obvious.[7]

The reasoning of the Court of Civil Appeals in adding this recovery of interest paid, although not sought in Mrs. Miller's pleadings, was stated: "To effectuate the intent of the usury statute, the interest payment should be returned to Mrs. Miller before she recovers twice the interest charged, so that the net effect is a forfeiture of twice the interest charged." It based this reasoning on a statement in *Wall v. East Texas Teachers Credit Union, supra,* a case which was not in any manner comparable on this particular point.[8] In *Wall,* no interest had been paid, but the lender was affirmatively seeking payment of the usurious interest. It was erroneously awarded to him as an offset against the borrower's recovery of twice the interest contracted for. Our principal holding in *Wall* was that the lender cannot recover unpaid interest under a usurious contract. The case, of course, *did not* involve any attempt by the borrower to recover interest, because he had paid none. A correct interpretation of *Wall* and Article 5069–1.06 on this point was made by the Court of Civil Appeals in *Ferguson v. Tanner Development Co.,* 541

S.W.2d 483, 495 (Tex.Civ.App.1976), but it allowed common law recovery of the alleged usurious interest, a claim therefor having been specifically sought in the pleadings of the payor. The holdings on this point were not reached in this Court, because the case was reversed and rendered on other points. 561 S.W.2d 777 (1977). We have no such common law point or pleadings before us in the present case, and therefore express no opinion thereon.

 Since provisions for forfeitures and statutes of a penal nature are to be strictly construed, we hold that twice the amount of usurious interest contracted for, charged or received is the maximum that may be recovered by an obligor under the provisions of Article 5069–1.06(1).

Accordingly, the judgment of the Court of Civil Appeals is modified by eliminating therefrom the paragraph on page 2 which orders that Macile Miller recover from the First State Bank, Bedford, Texas, the additional sum of $14,000. As so modified, the judgment of the Court of Civil Appeals is affirmed.

Dissenting opinion by SAM D. JOHNSON, J., in which STEAKLEY and McGEE, JJ., join.

SAM D. JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

This writer agrees with the greater part of the majority opinion. Under the section entitled "Recovery of Interest Payments,"

---

7. Prior to the enactment of the present usury statutes in 1967, usurious contracts were provided by statute to be "void and of no effect," and the recovery was limited to twice the amount of interest paid. Article 5071, read as follows:

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; and all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater rate of interest shall be *void and of no effect for the amount or value of the interest only;* but the principal sum of money or value of the contract may be received and recovered." (Emphasis added.)

Article 5073 read:

"Within two years after the time that a greater rate of interest than ten percent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same."

8. The statement, which applied to the facts and pleadings in *Wall v. East Texas Teachers Credit Union, supra,* was "a penalty of twice the amount of usurious interest contracted for is not effected if Wall, the obligor, is required to pay the usurious interest." 533 S.W.2d 918 at 921.

the majority correctly recites that the lender Bank is clearly not entitled to recover the two seven thousand dollar sums, one of which was deposited with the court and the other being deposited in Mrs. Miller's account with the Bank, for under the unequivocal writings of this court the sums represent usurious interest. *Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918 (Tex.1976).

However, the majority then continues by holding that usurious interest actually paid by the borrower to the lender under the usurious contract is never recoverable under Article 5069–1.06, Texas Revised Civil Statutes Annotated:

"Neither do we agree that recovery of interest by the payor is authorized as an additional forfeiture penalty under Article 5069–1.06(1), which provides that any person who 'contracts for, charges or receives' usurious interest 'shall forfeit to the obligor twice the amount of interest contracted for, charged or received . . .' Section (1) of Article 5069–1.06 does not so provide. Section (2) of the same Article, relating to any lender 'who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit *as an additional penalty all principal as well as interest* and other charges . . ..' If the Legislature had intended the additional penalty of forfeiture of interest paid under Section (1), it would have been a simple matter to have so stated, as in Section (2)."

What the majority would therefore hold in the instant case is that (1) unpaid usurious interest may not be recovered by the lender, (2) usurious interest on deposit in the lender's bank under a "freeze order" may not be retained by the lender, and (3) usurious interest deposited in the registry of the court may not be recovered by the lender. But, in any instance where the usurious interest has actually been received by the lender, the lender may retain such interest even though payments may have been made through ignorance, mistake, or fear.

Such a result is, in effect, an application of the *pari delicto* approach in construing usurious contracts. This approach was not utilized in Texas prior to the enactment of Article 5069–1.06, and the Legislature has specifically rejected such an approach in its Declaration of Legislative Intent for this Act. The courts, whether acting under statute or common law, have generally taken one of two approaches to usurious contracts: (1) the *pari delicto* approach; or (2) the "victim" approach. The *pari delicto* theory proceeds under the premise that a usurious contract is illegal or is one under which there is no liability to pay. As such, interest paid under the usurious contract with knowledge of the facts is not recoverable. On the other hand, the "victim" approach does not regard the borrower and lender as being on equal footing in negotiating the usurious contract. This approach allows recovery of usurious interest paid, holding that the lender has taken advantage of the necessities of the victim. *See* 59 A.L.R.2d 522 and cases cited therein.

Prior to the enactment of Article 5069–1.06, the Texas courts specifically rejected the *pari delicto* approach in *Bexar Building & Loan Ass'n v. Robinson*, 78 Tex. 163, 14 S.W. 227 (Tex.1890). There is no indication that this posture has been relaxed in Article 5069–1.06; on the contrary, the Legislature has most adamantly advocated the "victim" approach. The Declaration of Legislative Intent recognizes that "[m]any citizens of our State are being victimized and abused in various types of credit and cash transactions. These practices impose a great hardship upon the people of our State." 15 Texas Revised Civil Statutes Annotated, at 1. Accordingly, to effectuate the *pari delicto* approach in the instant case is to fail to accurately comport with the legislative intent in enacting Article 5069–1.06.

Furthermore, the majority opinion's interpretation of Article 5069–1.06 reaches an inequitable if not unconstitutional result. It imposes the penalty for usurious interest unequally. The lender who exacts payment of all or part of the usurious interest places himself in the position of being, under the interpretation by the majority, penalized

less than the lender who has received no payment of usurious interest. Although both lenders, under the statute, are to sustain a forfeiture of twice the usurious interest, the lender who has obtained all or partial payment of the interest is not required to refund such amount; therefore, in effect, his penalty is offset by the interest payments received. *Indeed, in instances where all the interest has been paid by the borrower, one half (or fifty percent) of the legislatively required forfeiture is eliminated.* Accordingly, borrowers are placed on different footings depending on whether or not they have actually paid usurious interest. Furthermore, the present interpretation by the majority allows for varying results from case to case. In some instances the facts may involve "contracted for" terms which constitute usury, as well as payments "charged or received" under the usurious contract. One court could award twice the amount *paid* as a penalty; whereas, another court could award twice the amount *contracted for* in the usurious contract as a penalty. Such interpretations and judgments result in inequitable enforcement of the statute. The fundamental principles of statutory construction require that a statute "not be construed so as to ascribe to the Legislature an intention to do an unjust or an unreasonable thing, if such statute is reasonably susceptible of a construction that will not accomplish such a result." *Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455, 458–59 (1942); *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691 (1955).

The Declaration of Legislative Intent for this Act specifically indicates that the statute was not intended to develop such a variable system of regulation or penalty imposition; this Declaration provides in part:

"(5) These facts conclusively indicate a need for a comprehensive code of legislation to clearly define interest and usury, to classify and regulate loans and lenders, to regulate credit sales and services, and place limitations on charges imposed in connection with such sales and services, . . . and *to provide firm and effec-*

*tive penalties for usury and other prohibited practices."* Declaration of Legislative Intent, 15 Texas Revised Civil Statutes Annotated, at 2. [Emphasis added.]

Furthermore, the Declaration of Legislative Intent points out that the Act was intended to deal with credit abuses which impose intolerable burdens upon those segments of our society which can least afford to bear them; specifically, "the uneducated, the unsophisticated, the poor and the elderly." Declaration of Legislative Intent, *supra.* Often it is this category of persons from whom actual payment of usurious interests might be exacted, yet it is this category who most needs the protection of the Act. The lenders servicing these segments of society will then forfeit less when found to charge usurious interest. Therefore, the legislative intent is thwarted by the majority's interpretation of the statute as it does not protect all borrowers equally, does not treat all lenders exacting usury the same, does not provide a systematic regulation of usury, and does not obtain a forfeiture of "twice the amount of interest contracted for, charged or received."

The wording of Article 5069–1.06, Subsection (1), is ambiguous in its provisions of forfeiture wherein it states:

"Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest *contracted for, charged or received,* . . ." [Emphasis added.]

In a single transaction the amount "contracted for," the amount "charged," and the amount "received" each might be different sums. Such, in fact, is the instance in the present case. Under such circumstances, the standard for imposing the forfeiture is nebulous. Although penal statutes must be strictly construed, the fundamental principles of statutory construction apply. Accordingly, in construing ambiguous statutes the courts must determine the legislative intent. *Minton v. Frank,* 545 S.W.2d 442 (Tex.1976); *Jones v. Del Andersen and Associates,* 539 S.W.2d 348 (Tex.1975). The

language of the statute is capable of a reasonable and equitable interpretation which comports with the legislative intent and allows recovery of the usurious interest actually paid by the borrower, as well as imposition of a penalty of twice the usurious interest contracted for, charged or received. Usurious contracts may be evidenced by the actual wording of the contract or by the substance or form of the transaction. Our courts have consistently held that substance rather than form of a loan transaction will determine if a loan is usurious and that the courts will ferret out various shadow transactions to determine if their provisions are usurious. *State v. Community Finance & Thrift Corporation,* 334 S.W.2d 559 (Tex.Civ.App.—Austin 1960), *per curiam,* 161 Tex. 619, 343 S.W.2d 232 (1961); *Schmid v. City Nat. Bank of Wichita Falls,* 132 Tex. 115, 114 S.W.2d 854 (1938). The penalty provisions of Article 5069–1.06 are designed to meet both the circumstances where there is written evidence of the usurious interest rate or those circumstances where the transactions themselves must be viewed to determine the usurious amounts. Where the contract terms provide the basis for the determination of usurious interest, Article 5069–1.06 provides that the forfeiture should be twice the amount of interest "contracted for." Where the transaction itself must be viewed in order to determine the usurious contract, the penalty forfeiture cannot be based on "contracted for" terms and must be based upon twice the amount of interest "charged or received" evidenced by the transaction involved.

Such an interpretation does not preclude the recovery of interest paid in addition to the imposition of the penalty. This interpretation is consistent with the language of the statute read as a whole. Article 5069–1.06(2) provides for penalties where the interest rate charged is in excess of double the amount of interest legally allowed under the Act. In describing the penalty, Subsection (2) provides "all principal *as well as interest*" shall be forfeited. The use of the term "as well as" indicates that the forfeiture of interest has previously been authorized in the statute. If this section were the sole basis for the refunding of the interest, the proper wording would have been "all principal *and* interest" shall be forfeited. Therefore, such language can be validly interpreted to mean that Subsection (1) already provides for the forfeiture of the interest paid in addition to the penalty imposed therein.

The determination of whether usurious interest paid should be refunded under Article 5069–1.06 should be interpreted consistently with this court's writing in *Wall v. East Texas Teachers Credit Union, supra,* in which the court stated:

"A penalty of twice the amount of usurious interest contracted for is not effected if Wall, the obligor, is required to pay the usurious interest. In such event the forfeit in his favor is not twice the interest contracted for, but only once. Unquestionably, the terms of the statute demonstrate the legislative purpose that as to interest a usurious contract is unenforceable." 533 S.W.2d 918 at 921.

The majority attempts to confine the holding in *Wall* to the narrowest view of its facts. To do so is to overlook the unambiguous holding of this court in *Wall* that a usurious contract is completely unenforceable as to interest. In the instant case, however, the majority in effect actually enforces the partial validity of the usurious contract; that is, to the extent that the borrower has voluntarily paid the usurious interest.

This writer would hold that the statute adequately provides the basis for the refunding of the usurious interest paid, as well as the imposition of the legislatively provided penalty. However, the majority holds that even if Mrs. Miller were entitled to a refund under the statute she did not plead for such a refund and, therefore, cannot recover the interest paid. Mrs. Miller's failure to seek such a refund should not preclude a judgment awarding her the usurious interest paid. Article 5069–1.06 is written in mandatory language, stating that where usurious interest is charged the lender *"shall forfeit* to the obligor." Mrs.

Miller's burden is to establish the existence of a usurious contract. Once this element is proven the courts are mandated to enact the penalty provisions of the statute; the forfeiture provisions are specifically for the court to determine and to enforce.

In the instant case no valid reason is given by the majority for permitting the lender to retain the usurious interest received. Mrs. Miller, the borrower, is entitled to and should be refunded all usurious interest paid in addition to the legislatively required penalty of twice the contracted interest rate which was found to be usurious. This result is clearly in line with the legislative intent, the law of usury, and equitable enforcement of the statute as reflected in the *Wall* decision. This writer would affirm the judgment of the court of civil appeals.

STEAKLEY and McGEE, JJ., join in this dissent.