COMMERCIAL CREDIT EQUIPMENT
CORPORATION, Appellant,

v.

Charlie WEST and Dee Allen, Appellees.

No. 07–82–0327–CV.

Court of Appeals of Texas,
Amarillo.

Aug. 23, 1984.

Hinkle, Cox, Eaton, Coffield & Hensley, O.M. Calhoun, Amarillo, for appellant.

Whittenburg, Whittenburg & Schachter, David Mullin, Amarillo, Gassaway, Gurley, Sheets & Mitchell, Jody G. Sheets and Timothy D. Zeiger, Borger, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

## ON MOTION FOR REHEARING

DODSON, Justice.

We withdraw our former opinion handed down on 31 July 1984, and substitute this opinion. In this opinion, we reach the same result and overrule the motion for rehearing filed by Commercial Credit Equipment Corporation.

Commercial Credit Equipment Corporation appeals from an adverse judgment rendered by the trial court in favor of Dee Allen and Charlie West after a jury trial on Allen's and West's cause of action for usury, triple damages and attorney's fees and Commercial Credit's cross-action for a deficiency judgment. We affirm.

The record shows that Allen and West purchased an airplane from Denver Beechcraft, Inc., by executing an instrument entitled "Commercial Credit Equipment Corp. —Aircraft Security Agreement," dated 25 May 1979. By its terms, the agreement was assigned to Commercial Credit. Allen and West defaulted on the payments prescribed by the agreement. After the default, Commercial Credit took possession of and sold the airplane. After Commercial Credit sold the airplane, Allen and West brought their action against Commercial Credit for usury, triple damages and attorney's fees under the Texas Usury Law. Responding to Allen's and West's action, Commercial Credit claimed that the agreement in question provided for a "time price

differential" charge, rather than interest. In the alternative, Commercial Credit claimed the agreement was controlled by the law of the State of Colorado, which permits interest in such transactions at the rate of 45% per annum.

In response to special issues, the jury determined, among other things, that the finance charges in the 25 May 1979 agreement were "interest"; that Commercial Credit contracted with Allen and West for interest of $44,889 on an installment loan of $85,025 to be paid in 84 equal monthly installments; that before 22 October 1980, Commercial Credit accepted, or agreed to accept, West's check for $1,500 in full and complete settlement of its claims against him; that the sale of the repossessed airplane was not commercially unreasonable; and, that Commercial Credit gave West reasonable notice of the sale of the repossessed airplane.

■ The appellant brings fifteen points of error. By its first point of error, Commercial Credit claims the trial court erred by overruling its "motion that the Court take judicial notice of the statutes of the state of Colorado, for the reason that the judge was furnished sufficient information to comply with the request and all adverse parties were properly notified all in compliance with Rule 184a of the Texas Rules of Civil Procedure." The record shows that Commercial Credit filed its motion and that the motion was heard by the trial court. However, the record fails to show that the appellant obtained an adverse ruling on its motion. Consequently, Commercial Credit's first point of error presents nothing for further review. The general rule is that the record must not only disclose that certain relief was requested but that the trial court made an adverse ruling on the request. *State v. Dikes*, 625 S.W.2d 18, 20 (Tex.App.—San Antonio 1981, no writ); *Harris v. Thompson Buick, G.M.A.C., Inc.*, 601 S.W.2d 757, 758 (Tex.Civ.App.—Tyler 1980, no writ). Commercial Credit's first point of error is overruled.

■ By its third point of error, Commercial Credit maintains that the trial court erred by sustaining the appellees' "objection to the introduction into evidence of the printed statute book containing the laws of the state of Colorado regarding usury for the reason that the printed book purported to have been printed under the authority of the secretary of state of the state of Colorado, and was authenticated by a witness who was familiar therewith." Commercial Credit's third point of error does not present reversible error.

■ There are two methods of bringing before a Texas court the law of a sister state in an action which purportedly presents a conflict of laws question. Crutsinger, *Judicial Notice—Law of Sister State*, 19 Baylor L.Rev. 112 (1967). Those methods are (1) under the common law rule and (2) under Rule 184a of the Texas Rules of Civil Procedure (*i.e.*, an exception to the common law rule). *Id.* at 114. Under the common law rule, the law of a sister state is treated as fact. *Id.* Pleading and proof of the law of the sister state are required and the issue is for the fact trier. In jury trials, the fact that the alleged foreign law exists must be proved to the jury as any other fact issue. After that fact is established by the jury, the questions of applicability, competency and construction are for the court. *Id.*

■ In this instance, Commercial Credit candidly admits in its brief that, before the trial court's refusal to admit the statute in question, its Regional Vice-President had already testified that the Colorado usury laws allowed forty-five percent (45%) interest on the transaction in question. Commercial Credit qualified one of its officers as an expert witness on the Colorado usury law. The questioned statute was cumulative to the officer's testimony. Consequently, we conclude that the trial court's failure to admit the statute was not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment in the case. Furthermore, the record shows that Commercial Credit did not request an issue on the fact

question essential to prove the sister state's law under the common law rule. Thus, the appellant waived a factual determination on that essential element under the common law method of proof. Commercial Credit's third point of error is overruled.

By its second point of error, Commercial Credit maintains the trial court erred by instructing the jury that Texas law, and not Colorado law, governed the transaction in question because the contract in question was made performable in the state of Colorado. Our disposition of the appellant's first and third points of error is dispositive of its second point of error. Nevertheless, if our disposition of those points of error were not dispositive of the second point of error, we would overrule that point.

We acknowledge that our Supreme Court has determined that *lex loci* rules will no longer be used in this state to resolve conflict problems. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984). In *Duncan*, the court stated:

> Instead, in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, *the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.* [Emphasis added.]

*Id.* at 421. In this instance, the contract does not contain a choice of law provision; and, Texas is the state with the most significant relationship to the particular substantive issue to be resolved in Allen's and West's cause of action against Commercial Credit.

Allen's and West's primary cause of action against Commercial Credit is for a violation of Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (Vernon Pamp.1984). In pertinent part, that statute provides that "[a]ny person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall

forfeit to the obligor ..." the stated penalty. The statute was violated when the contract was executed and the interest was charged to Allen and West. Those events occurred when the contract in question was executed by Allen and West. It is undisputed that the contract was executed by Allen and West at Spearman, Texas. Consequently, since the contract was executed in Texas and the Texas statute was violated when that event occurred, we conclude that the laws of Texas have the most significant relationship to the particular substantive issue to be resolved by Allen's and West's cause of action. Thus, we would overrule Commercial Credit's second point of error.

By its sixth point of error, Commercial Credit claims the trial court erred by refusing to submit its requested special issue number 20 because the law is well settled "that in the event that a transaction provides for a 'time price differential' then it cannot be usurious." Commercial Credit's requested special issue number 20 reads:

> Do you find from a preponderance of the evidence that the "finance charge" added to the "cash purchase price" in the Aircraft Security Agreement, Exhibit _____, is a "time-price differential"?
>
> Answer yes or no. Answer _____.

The term "time-price differential" as used in the foregoing issue means a sum of money added to the cash price for the privilege of paying the purchase price for the merchandise in monthly installments over a stated period of time.

You are further instructed that a seller may have a cash price for his commodity and a different and higher time-credit price for the same commodity, and such difference in prices does not constitute insterest [sic] for the forebearance, use, detention of money or credit.

Time price differential is an affirmative defense to an action for usury.[1] By the

1. The definitions of "interest" and "usury" in the interest statute are found at Tex.Rev.Civ.Stat.

above issue the appellant requested the trial court to submit its affirmative defense. However, the trial court did not err by refusing the requested issue because it does not contain the essential elements of Commercial Credit's defense.

■■■ By judicial definition, time price differential is the higher of two prices a consumer *knowingly* pays over a period of time as opposed to immediately paying the full, but lesser cash price. *Weis v. Taylor*, 613 S.W.2d 332, 334 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.); *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd). As the court stated in *Weis:* "For the courts to be able to discern time price differential from usury the seller must prove: 1. Two prices were offered; 2. The purchaser was aware of the two offers; and 3. The purchaser *knowingly* chose the higher 'time price.'" *Id.* at 334. (Emphasis added.)

In this instance, the record shows that Allen and West did not have the money to pay the cash price for the airplane. West testified that Denver Beechcraft's agent, Jim Hasemeyer, told West that Commercial Credit would loan him the money to buy the airplane, that the interest rate would be 13%, that West would pay $44,889.40 in interest over the life of the loan, and that the finance rate being charged West and Allen was 13%.

The testimony of Commercial Credit's officials shows that Commercial Credit viewed the transaction as a loan of money to Allen and West to purchase the airplane. One official testified that the finance charge was interest on Commercial Credit's money. Mr. Campbell, appellant's Regional Vice-President, also testified that the finance charges on the agreement were "charges for the use of our [Commercial Credit's] money."

When the evidence is viewed in the light most favorable to the appellant, that evidence does no more than raise the question of time price differential. However, Commercial Credit's requested issue does not contain the essential elements of that defense. Thus, we conclude that the trial court did not err by refusing to submit the requested issue. *See* Tex.R.Civ.P. 279. Commercial Credit's sixth point of error is overruled.

By its seventh point of error, the appellant claims the trial court erred "in instructing the jury in Special Issue Number 2, as follows: 'You are instructed that "interest" is compensation for the use of money', for the reason that such definition is legally incomplete in that it does not comport with the statutory definition and accordingly is misleading." Special Issue Number 2 reads:

Do you find from a preponderance of the evidence that the "finance charges" in the May 29, 1979 agreement were "interest"?

You are instructed that "interest" is compensation for the use of money.

Answer "We do" or "We do not."

Answer: ___We do___

■■■ Commercial Credit's complaint is that the instruction does not track the statutory definition by including time-price differential. The statute reads:

Article 5069–1.01. Definitions.

(a) "Interest" is the compensation allowed by law for the use or forebearance or detention of money; *provided however, this term shall not include any time price differential however denominated arising out of a credit sale.* [Emphasis added.]

As we point out above, "time price differential" is an affirmative defense to usury. By the above requested definitions, Commercial Credit attempted, in legal effect, to

Ann. art. 5069–1.01 (Vernon 1971):
Article 5069–1.01. Definitions.
(a) "Interest" is the compensation allowed by law for the use or forebearance or detention of money; *provided however, this term shall not include any time price differential*

*however denominated arising out of a credit sale.*
. . . .
(d) "Usury" is *interest* in excess of the amount allowed by law. [Emphasis added.]

require Allen and West to negate its alleged affirmative defense. Consequently, the trial court did not err by failing to instruct the jury in the words of the statute, as requested by Commercial Credit. *See* Tex.R.Civ.P. 277. Commercial Credit's seventh point of error is overruled.

By its ninth point of error, Commercial Credit claims the trial court erred "in submitting Special Issue Number 2 to the jury for the reason that the evidence was conslusive [sic] that the 'finance charges' provided for in the agreement were a 'time-price differential.'" The evidence stated above in our discussion of the sixth point of error is sufficient to show that Commercial Credit did not conclusively establish that the "finance charges" were a time price differential. The testimony of Commercial Credit's officials negates time price differential. Commercial Credit's ninth point of error is overruled.

By its tenth point of error, Commercial Credit maintains that the evidence is factually insufficient to support the jury's answer to Special Issue Number 2. We disagree. In that regard, we have considered all of the evidence in support of the jury's answer and contrary to that answer and conclude that the jury's answer is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Commercial Credit's tenth point of error is overruled.

By its fourth point of error, Commercial Credit maintains that the trial court erred by "refusing to submit defendant's Special Issue Number 18, for the reason that the law is well established that 'intent' is necessary in order to find someone guilty of violating the usury laws of the state of Texas." We disagree.

Commercial Credit's requested Special Issue Number 18 reads:

Do you find from a preponderance of the the [sic] evidence that the defendant, Commercial Credit Equipment Corporation, by its purchase of the "Aircraft Security Agreement" admitted in evidence herein as plaintiff's exhibit *No. 1*

intended to violate the usury laws of Texas by charging a greater rate of interest than is allowed by the laws of Texas?

Answer yes or no. Answer
_____.

"Usury" as used in the foregoing issue is defined by law as being interest in excess of the amount allowed by law.

We acknowledge that some Courts of Civil Appeals opinions in cases decided before the Supreme Court decision in *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982) suggested that intent to charge usurious interest was an element of the plaintiff's cause of action. *See American Century Mtg. Investors v. Regional Ctr.*, 529 S.W.2d 578, 583 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) and the cases cited therein. However, in *Holley*, the Court stated that the essential elements of a usurious transaction are:

(1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower.

629 S.W.2d at 696. Those essential elements are taken from *Pansy Oil Co. v. Federal Oil Co.*, 91 S.W.2d 453, 455 (Tex. Civ.App.—Texarkana 1936, writ ref'd), and first appeared in *Bexar Building & Loan Ass'n v. Robinson*, 78 Tex. 163, 14 S.W. 227, 228 (1890), a common law action to recover for usurious interest paid. Thus, we conclude that intent is not an essential element of Allen's and West's action. Consequently, we overrule Commercial Credit's fourth point of error.

By its fifth point of error, Commercial Credit claims the trial court erred by "refusing to submit defendant's Special Issue Number 19, for the reason that the law is well established that in the event that the person charged with usury was operating under a 'bona fide error' as to what state's laws would control then usury does not occur." We disagree.

Commercial Credit's requested Special Issue Number 19 reads:

Do you find from a preponderance of the evidence that the defendant, Commercial Credit Equipment Corporation, was operating under a bona fide error when they purchased the "Aircraft Security Agreement" as to what State's laws would control the terms and provisions thereof?

Answer yes or no. Answer _____.

The term "bona fide error" as used in the foregoing issue is defined as being an error committed in good faith in the honest belief that the act committed was lawful.

 The only authority Commercial Credit cites in support of its position is that portion of article 5069–1.06(1) which states that there shall be no penalty for a violation which results from an accidental and bona fide error. Lack of knowledge of the Texas Usury Law and its applications to a particular transaction is not the type of bona fide error contemplated by the statute. In this instance, there is no alleged error in calculation of the amount stated in the agreement made by the parties. It is undisputed that the parties intended to make the bargain which they made. As stated in *Johns v. Jaeb*, 518 S.W.2d 857, 860 (Tex.Civ.App.—Dallas 1974, no writ), "[i]gnorance of the usury law is not a 'bona fide error' within the statute if the parties intended to make the bargain which they made." Also, we agree with Allen's and West's contention that Commercial Credit did not plead "bona fide error" in the trial court. Commercial Credit's fifth point of error is overruled.

 By its eighth point of error, Commercial Credit claims the trial court erred in instructing the jury as follows: "You are instructed that Commercial Credit Equipment Corp's notice to Dee Allen of the sale of the airplane to Wells Aircraft was unreasonable 'for the reason that the evidence conclusively shows to the contrary.'" The challenged issue appears in the court's charge as a preliminary instruction to Special Issue Number 16. In the trial court, Commercial Credit made no objection to the challenged instruction. In the absence of a predicating objection in the trial court, Commercial Credit's point of error presents nothing for review in this Court. *See* Tex. R.Civ.P. 274 and *Allen v. American National Insurance Company*, 380 S.W.2d 604, 609 (Tex.1964). Commercial Credit's eighth point of error is overruled.

By its eleventh point of error, Commercial Credit maintains that the trial court erred by submitting Special Issue Number 8 to the jury because the evidence conclusively established that it did not accept West's check in full settlement of his contractual obligation. By its twelfth point of error, Commercial Credit claims the evidence is factually insufficient to support the jury's answer to Special Issue Number 8. The record shows that by its response to Special Issue Number 8, the jury determined that "prior to October 22, 1980, Commercial Credit Equipment Corp. accepted or agreed to accept Charlie West's check for $1,500.00 in full and complete settlement of all Commercial Credit Equipment Corp.'s claims against Charlie West."

 All of the evidence bearing on Special Issue Number 8 was given by interested witnesses (*i.e.*, Mr. West, one of the appellees, and Mr. Campbell, Commercial Credit's Regional Vice President). The interested witnesses' testimony did no more than raise the issue for submission to the jury. Consequently, the appellant's eleventh point of error is overruled. By its answer to the challenged issue, the jury resolved the conflicts in the testimony and judged the credibility of the witnesses, which it had the exclusive right to do. Thus, when we consider all of the evidence on the issue, we cannot say that the jury's answer to the challenged issue was so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Accordingly, Commercial Credit's twelfth point of error is overruled.

By its thirteenth point of error, Commercial Credit claims it is entitled to set off against the judgment rendered in favor of Allen and West the sum of $3,730.84, which represents the deficiency amount received

by Commercial Credit on the resale of the repossessed airplane. Again, we disagree.

■ Reasonable notice to the debtor of the sale is an essential element of Commercial Credit's cause of action for a deficiency. As the court stated in *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982): "We hold that in order for a creditor in a secured transaction to sue for a deficiency after disposition of collateral in a commercially reasonable manner, he must first comply with those provisions of section 9.504 which require giving notice to the debtor." Section 9.504(c) of the Texas Business and Commerce Code (Vernon Supp.1984) requires reasonable notice.

■ In this instance, Commercial Credit failed to obtain a favorable determination in the trial court that it gave reasonable notice to Allen; therefore, it cannot recover or claim a deficiency against him. Nor can Commercial Credit recover a deficiency from West. Even though the jury found that West had reasonable notice of the sale, the jury further found in response to Special Issue Number 8 that Commercial Credit accepted or agreed to accept West's check for $1,500 in full and complete settlement of its claims against him. That determination limited West's liability to $1,500. However, the record fails to show that in the trial court Commercial Credit sought, in any manner, to recover that $1,500 amount. In absence of predicating action in the trial court, Commercial Credit is not entitled to recover that sum in this Court. *First State Bank of Bedford v. Miller*, 563 S.W.2d 572, 576 (Tex.1978). Consequently, we overrule Commercial Credit's thirteenth point of error.

By its fourteenth point of error, Commercial Credit claims the trial court erred by rendering judgment for Allen and West for usurious interest paid (*i.e.*, $8,894.25) under the obligation because, as a matter of law, Allen and West were not entitled to recover for usurious interest paid. To support its position, Commercial Credit states that in *First State Bank of Bedford v. Miller, supra,* the Court "unequivocally

held that interest received by lender under usurious contract is not recoverable by the debtor under the provisions of Article 5069–1.06," and that the Court "further questioned 'albeit impliedly' the correctness of the Court of Appeals holding in Ferguson vs. Tanner Development Company . . . that debtors were entitled to restitution of usurious interest paid under common law."

In *Miller,* the Court reversed the Court of Civil Appeals' award of $14,000 to the debtor "as a recovery of usurious interest paid." The Court reversed that award for two reasons. First, the Court pointed out that:

> Mrs. Miller did not plead for recovery of any interest paid. Such a claim was not tried by consent nor was it presented by Mrs. Miller on appeal. *The Court of Civil Appeals, on its own motion, added this award "to effectuate the intent of the usury statute."* A party may not sustain a favorable judgment on an unpleaded cause of action which was not presented to the trial court or in the Court of Civil Appeals. [Emphasis added.]

563 S.W.2d at 576. The Court also acknowledged that the Court of Civil Appeals decision in *Miller* was based in part on language and rationale from *Ferguson v. Tanner Development Co.*, 541 S.W.2d 483, 495 (Tex.Civ.App.—Houston [1st Dist.] 1976), *rev'd on other grounds*, 561 S.W.2d 777 (Tex.1977).

■ In its discussion of *Ferguson,* the Supreme Court in *Miller* stated:

> [B]ut it [*Ferguson*] allowed common law recovery of the alleged usurious interest, a claim therefor having been specifically sought in the pleadings of the payor. The holdings on this point were not reached in this Court, because the case was reversed and rendered on other points. 561 S.W.2d 777 (1977). We have no such common law point or pleadings before us in the present case, and therefore express no opinion thereon.

*Miller, supra,* at 577. The Court then determined that "twice the amount of usu-

rious interest contracted for, charged or received is the maximum that may be recovered by an obligor under the provisions of Article 5069–1.06(1)."[2] *Miller, supra.* Thus, the Court held, in effect, that the statute did not provide for the recovery of usurious interest paid by the obligor. The Court expressed no opinion on a common law recovery since that matter was not presented in the case. Consequently, we conclude that *Miller* does not preclude Allen's and West's common law action to recover for usurious interest paid.

In this instance, Commercial Credit candidly admits in its brief that Allen and West "pleaded for recovery of 'common law restitution of usurious interest paid to Commercial Credit.'" It is undisputed that Allen and West paid Commercial Credit usurious interest in the amount of $8,894.25. In *Bexar Building & Loan Ass'n v. Robinson, supra,* the Court determined that the obligor had a common law action for the recovery of usurious interest paid, even in the absence of any statute authorizing such recovery. The Court's decision in *Robinson* has not been expressly or impliedly overruled by subsequent Supreme Court decisions, nor by the present provisions of article 5069–1.06.

■■■ Article 5069–1.06(1) is a penalty statute and reads as follows:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

We find nothing in the quoted section or in subsequent sections of article 5069–1.06 that expresses a clear intent by the legislature to overturn the long-established common law action pronounced in *Robinson* for the recovery of usurious interest paid. It is a well-recognized and accepted principle of statutory construction that:

Courts, do not, however, favor repeals of settled principles by implication, and the legislature in the enactment of a statute will not be presumed to intend to overturn long-established legal principles, unless such intention is made clearly to appear by express declarations or by necessary implication. *To the contrary, the legislature will be presumed not to intend to overturn long-established principles of law, and the statute will be so construed, unless an intention to do so plainly appears by express declaration or necessary or unmistakable implication, and the language employed admits of no other reasonable construction.* [Emphasis added.]

*Flannery v. Bishop,* 81 Wash.2d 696, 504 P.2d 778, 781 (1972). *See also* 73 Am. Jur.2d *Statutes* § 181 (1974). In *Flannery,* the Court determined that the Washington Usury Penalty Statute did not overturn the long-established common law action for the recovery of usurious interest paid. We, likewise, conclude that article 5069–1.06 did not overturn or repeal the long-established common law action for recovery of usurious interest paid which was pronounced in *Robinson.* Consequently, Commercial Credit's fourteenth point of error is overruled.

We acknowledge that in its motion for rehearing, Commercial Credit challenges our disposition of its fourteenth point of error by stating that in *Bexar Building & Loan Ass'n v. Robinson, supra,* the court allowed the obligor to recover only the excess interest paid above the authorized legal rate. Thus, Commercial Credit, apparently contends that Allen's and West's recovery on this common law action is lim-

**2.** The prior statute.

ited to the excess interest paid above the legal rate.[3] We disagree.

The rule of damages applied in *Robinson* must be viewed in light of the present provisions of article 5069–1.06(1), which requires the obligor to *forfeit* "three times the amount of usurious interest *contracted for, charged or received.* [Emphasis added.]" Commercial Credit violated all three provisions of the statute. If Commercial Credit is permitted to retain from the interest paid an amount of interest equal to the legal rate, Commercial Credit benefits from its unlawful action and effectively escapes from the triple damages provision of the statute by retaining an amount of interest equal to the legal rate. Consequently, we overrule Commercial Credit's contention on rehearing and adhere to our disposition of its fourteenth point of error.

Commercial Credit's fifteenth point of error is not supported by argument or authority. As stated in *Gerstner v. Wilhelm*, 584 S.W.2d 955, 958 (Tex.Civ.App.—Austin 1979, writ dism'd): "Points of error are required to be supported by argument and authority, Tex.R.Civ.P. 418(e), and if not supported, the points are waived." Commercial Credit's fifteenth point of error is overruled.

In summary, Commercial Credit's fifteen points of error are overruled, the judgment of the trial court is affirmed, and Commercial Credit's motion for rehearing is overruled.

---

3. *Commercial Credit does not point us to evidence in the record establishing that amount, if* any.