NO. 07-03-0007-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 7, 2004


______________________________



In re: Z.H. and M.H., Minors 


_________________________________



FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;



NO. 51,363-A; HONORABLE JOHN T. FORBIS, JUDGE


_______________________________



Memorandum Opinion


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Timothy Huseman (Huseman) appeals pro se from an order in a suit to modify the
parent-child relationship and on a petition in intervention for conservatorship. Four issues
are asserted. Two deal with the trial court's purported failure to act upon various post-trial
motions. The remainder concern the trial court's denial of his request for a bench warrant
entitling him to personally appear at trial. Huseman was imprisoned at the time. We affirm
the order of the trial court. 

Background


 The 64th District Court of Hale County entered an order dated March 10, 1998, in
which it modified the parent-child relationship between Huseman and his two children, Z.H.
and M.H. Through it, he was removed as joint managing conservator, designated
possessory conservator, and his ex-wife, Rudina Faye Huseman (Rudina), designated sole
managing conservator. So too was he ordered not to have possession of or access to the
children at any time. 

 On January 25, 2002, Huseman, who was representing himself, filed a motion to
modify in which he requested limited access to his children through the mail and access
to information regarding their health, welfare, and education. Rudina (now Rudina
Paetzold) filed an answer and also a motion to transfer the matter to Randall County; the
proceeding was pending at the time in Hale County. The trial court granted the motion to
transfer on April 26, 2002. Thereafter, Rudina's new husband, Kennith Paetzold (Kennith), 
intervened seeking to be appointed a joint managing conservator. 

 Trial on the motion to modify was convened on December 3, 2002. Several days
before then, however, Huseman had filed his "Second Motion for Bench Warrant"
requesting that he be allowed to attend the proceeding. The trial court denied the request
on November 27, 2003, and the hearing proceeded without him. 

 Issue One - Attendance at Hearing

 In his first and fourth issues, Huseman complains about the denial of his request to
personally attend or otherwise participate in the trial. He believed that this violated his
constitutional rights. We overrule the issue. 

 We initially address the allegation about being denied opportunity to participate at
trial by means other than personal appearance. According to the record before us,
Huseman merely sought opportunity to personally attend the hearing. He did not request
the chance to participate through alternate means, such as affidavit, deposition, telephone
or the like. Again, he simply wanted to attend in person. Having failed to request the
chance to participate through alternate means, he cannot now complain on appeal about
being denied such relief. Commerical Credit Equipment Corp. v. West, 677 S.W.2d 669,
673 (Tex. App.--Amarillo 1984, writ ref'd. n.r.e.) This is especially so given that the trial
court's order did not foreclose pursuit of those substitute measures. 

 As to the trial court's denial of the bench warrant, we review that decision under the
standard of abused discretion. Armstrong v. Randle, 881 S.W.2d 53, 56-57 (Tex.
App.--Texarkana 1994, writ denied); see In re Z.L.T., 124 S.W.3d 163, 165-66 (Tex. 2003)
(applying the standard of abused discretion). Thus, we must determine whether the
decision comported with controlling guidelines and principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106
S.Ct. 2279, 90 L.Ed.2d 721 (1986). One such principle holds that while a prisoner cannot
be denied access to the courts simply because he is an inmate, an inmate has no absolute
right to appear in person at every proceeding. In re Z.L.T., 124 S.W.3d at 165. Rather, he
has the burden to establish his right to that relief; that is, he must present the trial court with
"factual information" illustrating why his presence is necessary and warranted. Id. at 166. 
And, the factual information should address such indicia as 1) the cost and inconvenience
of transportation, 2) the security risk involved, 3) whether the prisoner's claims are
substantial, 4) whether the matter can be delayed until his release, 5) whether the inmate
will offer admissible, non-cumulative testimony that cannot be effectively presented by
some other manner such as telephone, deposition or the like, 6) whether his presence is
important to judge his credibility and demeanor, 7) whether the trial is to a jury or the court,
and 8) the probability of his ultimate success on the merits. Id. at 165-66. The trial court
has no independent duty to sua sponte search for information touching upon those
subjects; again, the inmate has the obligation to provide it with the requisite data. Id. 

 In the case before us, we note that Huseman said nothing of the Z.L.T. factors in his
"Second Motion for Bench Warrant," that is, the one upon which the trial court acted. Nor
were they mentioned in the request for a bench warrant preceding that denied by the trial
court. 

 And, while he alluded to them in a request that he tendered to the Hale County
district court before the cause was transferred to Randall County, we do not find the
allusion enough to evince an abuse of discretion on the part of the court, assuming of
course, that the Randall County district court was made aware of the filing. (1) This is so
because his argument consisted of little more than unsworn commentary and conclusions. 
For instance, while he mentioned that he would "call witnesses and offer admissable [sic]
testimony," he failed to describe what that testimony would be, why it was probative, and
why it could not be provided through alternate means. Furthermore, when speaking about
the probability of his ultimate success, he said nothing more than 1) "[r]espondent's
accusations and allegations are so unfounded and Huseman has requested such basic
access to his children that Huseman fully believes he will succed [sic] . . .," 2) his ex-wife
previously succeeded in having the conservatorship modified because of "an ex parte
hearing held without Huseman's knowledge," and 3) his attorney did not appear on
Huseman's behalf. (2) The actual merits of his claim go unaddressed. Nor did he provide the
trial court with factual information touching upon his term of imprisonment and whether the
proceeding could have been reasonably delayed until his release; instead he simply says
that "any postponement . . . would serve no purpose other than to drive a wedge between
Huseman and his children." (3) These and the other unsupported conclusions mentioned in
the request filed with the Hale County district court did not satisfy his duty to provide
"factual information" to the Randall County district court. Consequently, we hold that the
trial court did not abuse its discretion in denying Huseman's second motion for a bench
warrant.

 Issues Two and Three - Post Trial Motions

 In his second and third issues, Huseman complained of the trial court's failure to rule
on his post trial motions. We overrule them as well.

 After issuance of the court's order, Huseman filed a motion for rehearing, motion for
clarifying order, and a request for findings of fact and conclusions of law. Because the trial
court did not act upon them, Huseman asserts that it erred, and he was harmed. Yet, the
motions for rehearing and to clarify were nothing more than an attempt to obtain a new trial
and seek a modification of the judgment, respectively. As such, they were overruled by
operation of law within 75 days after the judgment was signed. See Tex. R. Civ. P. 329b(c)
(stating that a motion for new trial or to correct or modify a judgment are overruled by
operation of law if not determined by written order within 75 days after the judgment was
signed). In short, the trial court was not obligated to formally act upon them. 

 As for the request for findings of fact and conclusions of law, the record does not
show that Huseman ever filed a notice of past due findings of fact and conclusions of law.
Same was required to perfect his complaint about their absence. Las Vegas Pecan &
Cattle Co., Inc. v. Zavala County 682 S.W.2d 254, 255-56 (Tex. 1984); In re Guthrie, 45
S.W.3d 719, 722 (Tex. App.--Dallas 2001, pet. denied); Curtis v. Commission for Lawyer
Discipline, 20 S.W.3d 227, 232 (Tex. App.Houston [14th Dist.] 2000, no pet.). 
Consequently, he waived this aspect of his issue. Id.

 Having overruled each issue, we affirm the "order in suit to modify parent-child
relationship and order on petition in intervention for conservatorship."


 Brian Quinn

 Justice 
1. Huseman did not refer to the request for a bench warrant filed with the Hale County court or
otherwise incorporate it by reference in any of the requests filed with the Randall County court.
2. We note that the trial court did grant Huseman the right to obtain "information concerning the health,
education, and welfare of the children . . . ." 
3. We find this comment of interest given that Huseman's status as an inmate in prison effectively
denied him physical access to his children.



ess.


This particular testimony was elicited in the context of the chances of the well desired by
appellants being successful. The other portion of his testimony with respect to a
development well was also in response to a question seeking an explanation of a
"development" well and is as follows:

 Well, a development well is an additional well placed into a proven
producing reservoir. The reservoir that Dr. Kerr has mapped, that the 1-23
produces from, is what I consider to be a proved producing reservoir. 
Somebody trying to drill another well into that reservoir is drilling what I call
a development well . . . An exploratory well is, you are drilling in an area,
trying to establish production from a horizon that is not being produced in the
immediate area . . .

 

 In both instances, a development well is distinguished from an exploratory well in
terms of risk. Under Texas law, there is no independent implied covenant to explore the
lease apart from the covenant to develop. Sun Exploration & Production Co. v. Jackson,
783 S.W.2d 202, 204 (Tex. 1989). The statements also followed the expert's testimony
that "the hypothetical offset protection well is going to be what I would term a development
well." Taken together, the statements merely establish that a well drilled to protect from
drainage is, by definition, a development well because it is drilled into a known producing
reservoir. They are not probative on the question of a lessor's implied duty to develop the
lease.

 Appellants also claim that the testimony from their engineering expert that a
reasonably prudent operator would have sought administrative relief from the Railroad
Commission and would have been able to obtain it applies both to the obligation to offset
and the obligation to develop. However, the record does not support that interpretation. 
Just prior to the expert's testimony on the subject, he stated, "we are trying to offset the 1-23 well . . ." [emphasis added]. Just after his testimony on the subject, he was asked when
would a "hypothetical reasonably prudent operator have drilled and completed the
hypothetical offset protection well?" [emphasis added]. The testimony itself makes no
reference to the development obligation.

 Appellants cite General Crude Oil Co. v. Harris, 101 S.W.2d 1098 (Tex.Civ.App.--Texarkana 1937, writ dism'd ), for the proposition that a court may allow recovery for both
drainage and for oil lost from recovery as a result of the failure to reasonably develop. Id.
at 1102. However, the unique facts of the case showed that the movement of oil through
the formation meant that a delay in production would result in a net loss of oil recovered. 
Id. Here, there was no evidence that production from the 1-24 well would result in any net
loss of gas beyond that lost by any drainage.

 This record does not show that appellants presented legally sufficient evidence to
support a finding that Amoco's failure to drill an additional well on Section 24 breached its
implied covenant to reasonably develop the lease. Without legally sufficient evidence, the
court did not err in refusing the requested instruction and question. Appellants' first point
is overruled. That holding obviates the need to address Amoco's waiver argument.

 Accordingly, the judgment of the trial court must be, and is hereby, affirmed.


 John T. Boyd

 Senior Justice


 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).